UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SMB CAPITAL LLC; BERNSTEIN EQUITY
PARTNERS, LLC; BD MD-87, LLC; and
AUGUSTA AVIATION (CAYMAN) INC.,

    Plaintiffs,

v.

GLOBAL AEROSPACE UNDERWRITING
MANAGERS (CANADA) LIMITED; and
GLOBAL AEROSPACE, INC.,

    Defendants.

Case No.:

## COMPLAINT

Plaintiffs, SMB CAPITAL LLC; BERNSTEIN EQUITY PARTNERS, LLC; BD MD-87, LLC; and AUGUSTA AVIATION (CAYMAN) INC., (collectively referred to herein as "SMB"), sue Defendants, GLOBAL AEROSPACE UNDERWRITING MANAGERS (CANADA) LIMITED, and GLOBAL AEROSPACE, INC. (collectively referred to herein as "Global"), and state as follows:

### NATURE OF THE ACTION

1. SMB brings this action for breach of contract and declaratory judgment against Defendants, Global, arising out of two aviation insurance policies issued by the Defendants, and fully paid for by SMB, continuously throughout the period of November 4, 2021, through November 4, 2023, (referred to herein collectively as the "Global Policies").

1

2. Plaintiff SMB has duly demanded, in accordance with all applicable terms and conditions of the Global Policies, that the Defendants pay all sums SMB becomes obligated to pay, in connection with the physical damage to a McDonnell Douglas Corporation Model DC-9-87 with aircraft Serial No. 49767 and at all times material with Cayman Islands Aircraft registration marks VP-CAA and subsequently with US registration mark N721MN (the "Aircraft").

3. There can be no reasonable dispute as to the damage to the Aircraft.

4. Despite that, Defendants have denied coverage for the sums paid by SMB, and to be paid by SMB, to repair the physical damage to the scheduled Aircraft.

5. Based on the unwarranted and bad faith denials of coverage, SMB seeks an award of damages for Defendants' breaches of their obligations under the Global Policies, and a declaration of SMB's rights and Defendants' obligations with respect to the coverage afforded under the Global Policies.

## THE PARTIES

6. Plaintiff SMB CAPITAL LLC is a limited liability company, with a principal place of business located at 2104 Lakehaven Point, Longwood, FL 32779.

7. Plaintiff Bernstein Equity Partners, LLC is a limited liability company with a principal place of business located at 228 Park Avenue S, PMB 45945, New York, NY 10003.

8. Plaintiff BD MD-87, LLC is a Florida Limited Liability Company, with a principal place of business located at 228 Park Avenue S, PMB 45945, New York, NY.  SMB Capital and Bernstein Equity Partners and/or any subsidiary, affiliated or

2

associated company and/or any company over which they exercise financial and/or management control as now exists or may hereafter be created or acquired, are named insureds in the Global Policies. At all material times, wholly owned subsidiaries or affiliates of SMB owned and operated the scheduled Aircraft.

9. Upon information and belief, SMB alleges defendant Global Aerospace, Inc. is headquartered in London, United Kingdom, and maintains offices in the United States and other countries, including Canada. Global Aerospace, Inc. is a foreign for-profit corporation, and maintains a U.S. Home Office at 115 Tabor Road, Suite 3A, Morris Plains, NJ 07950. Global Aerospace, Inc. is and at all times relevant hereto, has been registered to do business in Florida. Global Aerospace, Inc. is licensed to do insurance business by the Florida Department of Financial Services. As set forth in Global's website, Global touts itself as providing "seamless multi-national placement" and "simplified risk management" with "common policy wording to avoid gaps in coverage."

10. Upon information and belief, SMB alleges defendant Global Aerospace Underwriting Managers (Canada) Limited, is the Canadian office of Global Aerospace, Inc., with an office at 150 Commerce Valley Drive West, Suite 210, Markham, Ontario, L3T 7Z3.

## JURISDICTION AND VENUE

11. Under 28 U.S.C. §1332, as well as other statutory, constitutional, and common law bases, this Court has jurisdiction over the subject matter of this action as

the amount in controversy exceeds $75,000, and the parties are citizens of different states.

12. This Court also has jurisdiction over the Defendants because Defendants are licensed and do business within the State of Florida, have been or will be properly served process, and because the causes of action arise in whole or in part from the Defendants' transacting business in the State of Florida.

13. Under 28 U.S.C. §1391(b)(2), (d) and §1441(a), proper venue lies in this judicial district because Plaintiff SMB maintains a place of business in the Middle District of Florida, and because a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Florida.[1]

## BACKGROUND

## THE GLOBAL POLICIES

14. Global issued a Broad Horizon Aviation Insurance Policy for the Aircraft under Global Aerospace Policy No 20009966-ON-21 for the Policy Period of November 4, 2021, to November 4, 2022 (the "2021 Policy"), whereby Defendants agreed to provide to SMB aviation insurance coverage.[2] Global issued a Broad Horizon Aviation Insurance Policy for the Aircraft with Global Aerospace Policy No 20009966-ON-22 for the Policy Period of November 4, 2022, to November 4, 2023 (the "2022 Policy"), whereby Defendants agreed to provide to SMB aviation insurance

---

[1] The Global Policies are silent on choice of law, or where actions may be brought.
[2] Attached hereto as Exhibit A is a true and correct copy of the 2021 Policy.

coverage.[3] The 2021 Policy and 2022 Policy are collectively referred to herein as the "Global Policies."

15. Each of the Global Policies includes boilerplate language and an identical policy form described by Global as its Broad Horizon Aviation Insurance Policy and labeled as "Aircraft – BH (Rev. 01/01/2007)".

16. The Global Policies provided continuous coverage of the Aircraft from November 4, 2021, through November 4, 2023.

17. All monetary references in the Global Policies are expressed in the currency of the United States.

18. Part III of the Global Policies, entitled - Physical Damage Coverages – contains in relevant part the following "Insuring Agreement:"

> **COVERAGE L** – PHYSICAL DAMAGE TO SCHEDULED AIRCRAFT – ALL RISKS OF LOSS
>
> **1.** The Company shall pay for **physical damage** to the **scheduled aircraft . . . .**

19. The Global Policies define "**physical damage**" in relevant part, as "direct and accidental physical loss of or damage to the scheduled aircraft. . . ."

20. The Global Policies include, in relevant part, the following language:

> **POLICY CONDITIONS - GENERAL**:
>
> **5. Duties in the Event of Occurrence, Physical Damage, Claim or Suit.**

---

[3] Attached hereto as Exhibit B is a true and correct copy of the 2022 Policy.

(a) The **insured** shall promptly notify Global Aerospace Underwriting Managers (Canada) Limited of an **occurrence** that may result in a claim or suit or of any **physical damage** sustained that may result in a claim.

***

6. **Failure to Give Notice**.

Inadvertent failure to give notice or other information to Global Aerospace Underwriting Managers (Canada) Limited as required by this policy will not relieve the Company of its obligations set forth in this policy, provided that any inadvertent failure is corrected as soon as possible after coming to the attention of the **Named Insured** or its Insurance Department, if any.

***

19. **Where and When this Policy Applies.**

This policy applies to *bodily injury* or *property damage* which occurs and to *physical damage* sustained:

(a) anywhere in the world; and

(b) during the policy period.[4]

21. SMB has complied with all terms and conditions of the Global Policies, including payment of all premiums due.

22. SMB complied with the duties imposed upon them in each of the Global Policies.

23. SMB provided appropriate notification of the seizure of the Aircraft under the terms and conditions of the Global Policies.

24. SMB produced all pertinent records to Global, and cooperated with Global's investigation, as required by the Global Policies.

---

[4] The highlighting or bold emphasis added throughout this Complaint are contained in and form part of the 2021 Policy and the 2022 Policy.

6

## SEIZURE OF THE AIRCRAFT AND CLAIM FOR COVERAGE

25. On or about April 23, 2022, the Aircraft flew from Ghana to Conakry, Republic of Guinea. On or about April 25, 2022, Seth Bernstein, CEO of SMB Capital ("Mr. Bernstein"), was apprehended at gunpoint in Guinea, without provocation or justification. The Aircraft was seized and, on information and belief, was searched multiple times by Guinean authorities and military. Mr. Bernstein was eventually freed. On or about January 30, 2023, SMB was notified by the Guinean authorities that the Aircraft would be released. Throughout that period of time, up until the time the Aircraft was returned to Florida, significant efforts were made to recover the Aircraft, including coordination with the U.S. Embassy in Conakry, Guinea.

26. On or about March 14, 2023, counsel to SMB, and on March 27, 2023, the broker for SMB, notified Global of the seizure of the Aircraft, as required by the terms and conditions of the Global Policies.

**27.** After considerable effort, SMB was able to gain access to the Aircraft from Guinea in September 2023 and learned of the considerable damage to the Aircraft. On September 9, 2023, through heroic efforts, the Aircraft was flown to Sanford, Florida. As of the date of this complaint, the Aircraft remains in Florida undergoing extensive repairs.

## DEFENDANTS' DENIAL OF COVERAGE
## AND GLOBAL'S SUBSQUENT ACTION

28. On or about October 12, 2023, the Aircraft was inspected in Florida by a claims adjuster retained by Global and its Miami based aviation surveyor.

29. On October 23, 2023, Global delivered a Reservation of Rights letter to SMB. Global requested particulars of the claim. SMB provided Global with documents relating to the Aircraft's maintenance, costs, and repairs.

30. SMB continued to provide documents as requested. SMB's counsel had been in discussions with counsel for Global regarding coverage under the Global Policies until August 21, 2024, when in the midst of those discussions, Global sent a denial of coverage letter, denying coverage to SMB under both the 2021 Policy and the 2022 Policy.

31. On that same day, Global filed an action for declaratory judgment in the Ontario Superior Court of Justice, in an attempt to preempt SMB's seeking judicial relief the United States courts.

32. Global's Denial of Coverage Letter states "there are a number of policy terms, conditions and/or exclusions that would apply in the circumstances of this claim, and, as a result, there is no coverage under the 2021 Policy or the 2022 Policy."

33. Defendants denied coverage in part on Part III Conditions including Paragraph 1 thereof, which reads as follows:

> **1. Additional Duties of the Named Insured.**
>
> The **Named Insured** shall:
>
> (a) protect the <u>damaged</u> property whether or not Coverage L or M of this policy applies and if the **Named Insured** does not, the Company shall have no obligation to pay for any <u>further</u> ***physical damage*** due to the **Named Insured's** failure to protect the <u>damaged</u> property; reasonable expenses incurred in affording such protection shall be deemed to be incurred at the Company's request;

(b) file with the Company within ninety-one (91) days <u>after</u> *physical damage* or the end of the *disappearance* waiting period, sworn proof of loss . . .; and

(c) do all things necessary to arrange for transfer of its interest in any <u>salvage</u> . . . . [5]

34. Defendants' reliance on the above provision to allege that the insured failed to protect the Aircraft from deterioration and damage while at the airport in Guinea is unfounded and belied by the facts of the seizure and SMB's effort under the circumstances to protect the property once it became aware that the property may have been damaged.

35. During the seizure, SMB had no knowledge or information that the Aircraft had been damaged. In September 2023, upon recovery of the Aircraft, when SMB became aware of the damage, it properly stored and protected the Aircraft from any further damage. Once back in the possession of SMB, there was no further damage to the Aircraft. The past-tense nature of the underlined words above demonstrates that the provision applies to protection of the Aircraft after physical damage has occurred. That is all that is required under Part III, Condition 1, and SMB fully complied with that provision.

36. Defendants also base their denial on SMB's supposed untimely notice, quoting the following policy conditions:

---

[5] The underlined language is added herein for emphasis.

**POLICY CONDITIONS - GENERAL**:

> **5. Duties in the Event of Occurrence, Physical Damage, Claim or Suit.**
>
> (b)   The *insured* shall promptly notify Global Aerospace Underwriting Managers (Canada) Limited of an *occurrence* that may result in a claim or suit or of any *physical damage* sustained that may result in a claim.

37.   Defendants' notice basis is incomplete, if not disingenuous. Their denial ignores the very next paragraph of the policy, which states:

> **6. Failure to Give Notice.**
>
> Inadvertent failure to give notice or other information to Global Aerospace Underwriting Managers (Canada) Limited as required by this policy <u>will not relieve the Company of its obligations set forth in this policy</u>, provided that any inadvertent failure is corrected as soon as possible after coming to the attention of the *Named Insured* or its Insurance Department, if any.

38.   SMB complied with the duties imposed upon them in each of the Global Policies and provided appropriate notification of the physical damage to the Aircraft under the terms and conditions of the Global Policies.

39.   In their denial, Defendants also claimed that SMB made misrepresentations which negate coverage under the Global Policies.

40.   Specifically, Defendants allege that the Aviation Insurance Submission provided by SMB's broker: (1) suggested that the Aircraft was based in Canada as the address for SMB was a residential address in Toronto, Canada; and (2) represented that a Canadian company was providing administrative support for flight operations, yet the Aircraft was based in and operated from Florida, USA, and not Canada.

41.     The Global Policies, however, are silent on where the Aircraft is to be based. Defendants, as drafters of the policies, could have drafted the policies to require the Aircraft to be based or garaged in Canada but chose not to do so.

42.     The Global Policies provide *worldwide coverage*, with exclusions for certain countries. The Global Policies do not contain an exclusion for travel to the Republic of Guinea. Defendants could have drafted the policies to exclude coverage in Guinea but chose not to do so.

43.     SMB has retained the law firm of Byrd Campbell, P.A., agreeing to pay reasonable attorneys' fees for its services.

## COUNT I
### (Breach of Contract)

44.     SMB sues Global for damages which exceed $75,000.00 for breach of insurance contracts.

45.     SMB repeats and realleges each and every allegation contained in paragraphs 1-43 as if fully set forth herein.

46.     SMB gave proper notice to Defendants under the Global Policies and has properly demanded that Defendants pay the sums that SMB is obligated to pay as a result of the physical damage to the scheduled aircraft.

47.     SMB has fully satisfied all applicable contractual obligations under the Global Policies and has complied with all applicable terms and conditions of the Global Policies.

48. The damages resulting from the seizure of the Aircraft constitute physical damage and are covered under the Global Policies.

49. The Global Policies require that payment of all sums for compensation of such physical damage to the scheduled aircraft be paid to SBM.

50. SMB reasonably expected Defendants to pay sums SMB has been obligated to pay in connection with such physical damage to the scheduled aircraft.

51. Defendants failed to pay the sums SMB has, and may have to, pay in connection with such physical damage to the scheduled aircraft.

52. Defendants' refusal to pay all sums that their insured SMB becomes obligated to pay in connection with such physical damage to the scheduled aircraft constitutes breaches of Defendants' obligations in the Global Policies. As a result of these breaches, SMB has been damaged in an amount that will continue to increase as additional fees and costs are incurred.

WHEREFORE, SMB demands judgment against Defendants for compensatory damages, reasonable attorney's fees, and court costs.

## COUNT II
### (Declaratory Judgment)

53. SMB sues Global for declaratory and supplemental relief relating to the enforcement of insurance contracts.

54. SMB repeats and realleges each and every allegation contained in paragraphs 1-423as if fully set forth herein.

55. The Global Policies are valid and enforceable contracts and were in full force and effect at all relevant times.

56. An actual and justiciable controversy within the meaning of Article III, Section 2, Clause I of the United States Constitution exists between the parties concerning coverage for the Aircraft under the Global Policies.

57. As a result of this controversy, plaintiff SMB is entitled to a declaration that:

    a. Defendants failed to honor their contractual duty to SMB to provide coverage for the Aircraft;

    b. the damage to the Aircraft is covered under one, or both, of the Global Policies;

    c. SMB may select any one, or both, of the Global Policies for payment to SMB; and

    d. The Global policies require payment of all past and future sums that SMB has paid, or will pay, in connection with remedying the damage to the Aircraft; and

    e. SMB has no adequate remedy at law sufficient to compensate them in lieu of the issuance of such declaratory relief.

**WHEREFORE**, SMB demands judgment

    a. declaring that: (i) Global breached its contractual duty to SMB to provide coverage for the Aircraft; (ii) the damage to the Aircraft is covered under one, or both,

of the Global Policies; (iii) SMB may select any one, or both, of the Global Policies for payment to SMB; and (iv) Global is obligated to pay all past and future sums that SMB has paid, or will pay, in connection with the damage to the Aircraft;

      b.      Reasonable attorneys' fees and court costs; and

      c.      Granting SMB such other and further relief as the Court deems just and proper.

Dated: February 21, 2025

/s/ Tucker H. Byrd
**Tucker H. Byrd, Esq.**
Florida Bar No.: 381632
**Ann B. Makkiya, Esq.**
*Pro Hac Vice Forthcoming*
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: 407-392-2285
Primary Email: TByrd@ByrdCampbell.com
Primary Email: AMakkiya@ByrdCampbell.com
Secondary Email: Paralegal@ByrdCampbell.com
*Attorney for Plaintiffs*

**James W. Jarvis, Esq.**
Florida Bar No.: 229946
**JARVIS & ASSOCIATES, P.A.**
1550 Madruga Avenue, Suite 220
Coral Gables, Florida 33146
Telephone: 305-448-4848
Primary Email: jwj@jarvislaw.com