# EXHIBIT A

# BROAD HORIZON
# AVIATION INSURANCE POLICY

THROUGH



GLOBAL AEROSPACE UNDERWRITING MANAGERS (CANADA) LIMITED.

150 Commerce Valley Drive West, Suite 210
Markham, Ontario,
L3T 7Z3

FOR

## SMB Capital and Bernstein Equity Partners

ARRANGED BY:

Willis Canada Inc., a Willis Towers Watson Company
100 King St W. Suite 4700
PO Box 470
Toronto, Ontario, M5X 1E4

# GUIDE TO THE PROVISIONS OF YOUR POLICY

This guide has been prepared to help you in reading your policy.  It is not a part of the policy nor does it make reference to all of the provisions which might affect your insurance.  You are therefore urged to read the entire policy carefully.

## DECLARATIONS                                                                PAGE

Named Insured                                                                    i

Policy Period                                                                    i

Limits of the Company's Liability                                               ii

Description of Insured Aircraft                                                  v

Aircraft Use                                                                    vii

Pilots                                                                         vii

Premium                                                                        vii

Funds                                                                          vii

## PART I - LIABILITY COVERAGES

### INSURING AGREEMENTS

| | | | |
|---|---|---|---|
| **Coverage A** | - | Liability for Scheduled Aircraft | 1 |
| **Coverage B** | - | Liability for Temporary Substitute Aircraft | 1 |
| **Coverage C** | - | Liability for Non-Owned Aircraft | 1 |
| **Coverage D** | - | Liability for Damage to Aircraft that are Not Owned | 1 |
| **Coverage E** | - | Liability for Damage to Aircraft Hangars and Contents | 2 |
| **Coverage F** | - | Liability for Damage to Personal Effects and Cargo | 2 |
| **Coverage G** | - | Liability Arising out of Airport Premises | 3 |
| **Coverage H** | - | Liability for Sale of Aircraft, Aircraft Parts or Services | 3 |
| **Coverage I** | - | Liability Assumed by the Named Insured | 4 |
| **Coverage J** | - | Voluntary Settlements | 5 |

**EXCLUSIONS**                                                                   7

**DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS**                              10

**LIMITS OF LIABILITY**                                                         11



GLOBAL AEROSPACE

Policy Number: 20009966-ON-21

## PART II - MEDICAL EXPENSES COVERAGE

**INSURING AGREEMENT**    12

    **Coverage K**    -    Medical Expenses    12

**EXCLUSION**    12

**LIMITS OF LIABILITY**    12

**CONDITION**    13

## PART III – PHYSICAL DAMAGE COVERAGES

**INSURING AGREEMENTS**    14

    **Coverage L** - Physical Damage to Scheduled Aircraft - All Risks of Loss    14

        Extra Expense Payments (Applicable to Coverage L)    14

    **Coverage M** - Physical Damage to Spare Engines, Spare Parts and Mechanics' Tools - All Risks of Loss    14

**EXCLUSIONS**    15

**LIMITS OF LIABILITY**    15

**CONDITIONS**    16

    Additional Duties of the Named Insured    16

    Adjustment and Payment    16

    Application of Deductible    16

    Appraisal    16

    Automatic Increase in Insured Value of Scheduled Aircraft    17

    Automatic Reinstatement    17

    No Benefit to Others    17

    Return of Unearned Premium After Total Loss    17

    Salvage    17

    Stolen Property    17



## POLICY EXCLUSIONS - GENERAL

## POLICY DEFINITIONS - GENERAL

## POLICY CONDITIONS - GENERAL

POLICY EXCLUSIONS - GENERAL   18

POLICY DEFINITIONS - GENERAL   21

POLICY CONDITIONS - GENERAL

Automatic Insurance for Newly Acquired Aircraft   26

Bankruptcy   26

Cancellation   26

Changes   27

Duties in the Event of Occurrence, Claim or Suit   27

Failure to Give Notice   27

Financial Responsibility Laws   27

Lay-up   28

Legal Action Against the Company   28

Other Insurance   29

Premiums   30

Representations   30

State Statutes   30

Titles of Paragraphs   30

Transfer of Rights of Recovery Against Others to the Company   30

Transfer of the Named Insured's Rights and Duties Described in this Policy   30

Two or More Aircraft   30

United States Army, Air Force and Navy Insurance Requirements   31

Where and When this Policy Applies   31



## ENDORSEMENTS

Endorsement No. 1  -  Physical Damage Coverage (Applicable to the War, Hijacking and Other Perils Exclusion)

Endorsement No. 2  -  Liability and Medical Expense Coverage - Specific Aircraft (Applicable to War, Hijacking and Other Perils Exclusion)

Endorsement No. 3  -  Unearned Premium after Total Loss

Endorsement No. 4  -  Automatic Spare Engine Coverage

Endorsement No. 5  -  Profit Commission Conditions

Endorsement No. 6  -  Aviation Personal Injury Liability

Endorsement No. 7  -  Contingent Employers Liability

Endorsement No. 8  -  Engine Module Coverage

Endorsement No. 9  -  Mexican Certificate

Endorsement No. 10  -  Sanctions and Embargo Clause

Endorsement No. 11  -  Amendatory Endorsement - Where and When this Policy Applies

Endorsement No. 12  -  Additional Exclusions (Electronic Date Recognition & Asbestos)

Endorsement No. 13  -  Electronic Date Recognition Exclusion Limited Coverage

Endorsement No. 14  -  Electronic Data Event Liability Exclusion

Endorsement No. 15  -  Terrorism Risk Insurance Act of 2002 – No Coverage



# BROAD HORIZON AVIATION INSURANCE POLICY

POLICY NUMBER: 20009966-ON-21

The insurance afforded by this policy is provided by separate insurers, hereinafter referred to as "the Company." The liability of these insurers is several and not joint and is specifically set out below.

### THE COMPANIES

| | |
|---|---|
| **Temple Insurance Company**<br>**Toronto, Ontario** | **49.960%** |
| **Northbridge General Insurance Corporation**<br>**Toronto, Ontario** | **22.370%** |
| **National Liability & Fire Insurance Company**<br>**Toronto, Ontario** | **18.390%** |
| **Mitsui Sumitomo Insurance Company, Limited**<br>**Toronto, Ontario** | **9.280%** |

# DECLARATIONS

**Item 1**. (a) NAMED INSURED:  SMB Capital and Bernstein Equity Partners

(b) ADDRESS OF NAMED INSURED:  8 De Vere Gardens,
Toronto, Ontario, M5M 3E5

**Item 2.** POLICY PERIOD:

From  November 04, 2021  to  November 04, 2022

This insurance shall commence and cease on the dates shown at 12:01 A.M. local time at the address of the *Named Insured* set forth in Item 1 (b) above.



**GLOBAL AEROSPACE**

**Declarations** (continued)

**Item 3.**    LIMITS OF THE COMPANY'S LIABILITY:

The limits of the Company's liability as respects the insurance afforded by this policy shall be as follows:

# PART I - LIABILITY COVERAGES

**COVERAGE A** - LIABILITY FOR SCHEDULED AIRCRAFT:

SINGLE LIMIT BODILY INJURY AND
PROPERTY DAMAGE LIABILITY                         $500,000,000 each ***occurrence***

**COVERAGE B** - LIABILITY FOR TEMPORARY SUBSTITUTE AIRCRAFT:

SINGLE LIMIT BODILY INJURY AND
PROPERTY DAMAGE LIABILITY                         $500,000,000  each ***occurrence***

**COVERAGE C** - LIABILITY FOR NON-OWNED AIRCRAFT:

SINGLE LIMIT BODILY INJURY AND
PROPERTY DAMAGE LIABILITY                         $500,000,000  each ***occurrence***

   **SUPPLEMENTARY PAYMENTS** (Applicable to Coverages A, B and C)

   As respects expenses incurred under emergency conditions:

   $250,000  each ***occurrence***
   (payable in addition to the Limit of Liability set forth in Coverage A, B or C as applicable)

   As respects expenses incurred for search and rescue operations:

   $250,000  each ***occurrence***
   (payable in addition to the Limit of Liability set forth in Coverage A, B or C as applicable)

**COVERAGE D** - LIABILITY FOR DAMAGE TO AIRCRAFT THAT ARE NOT OWNED:

PROPERTY DAMAGE LIABILITY                         As respects ***temporary substitute aircraft*** or
                                                 ***non-owned aircraft***:
                                                 $7,500,000  each ***occurrence***

                                                 As respects aircraft other than ***temporary
                                                 substitute aircraft*** or ***non-owned aircraft***:
                                                 $1,000,000 each ***occurrence***

                                                 (both of the above limits are part of and not in
                                                 addition to the Limit of Liability set forth in Coverage
                                                 B, C or G as applicable)



Policy Number: 20009966-ON-21

**Declarations** (continued)

**COVERAGE E** - LIABILITY FOR DAMAGE TO AIRCRAFT HANGARS AND CONTENTS:

PROPERTY DAMAGE LIABILITY

$1,000,000 each **occurrence**
(as part of and not in addition to the Limit of
Liability set forth in Coverage A, B, C or G as
applicable)

**COVERAGE F** - LIABILITY FOR DAMAGE TO PERSONAL EFFECTS AND CARGO:

PROPERTY DAMAGE LIABILITY

As respects **personal effects**:
$5,000 each **crew member** or **passenger**
each **occurrence**

As respects **cargo**:
$250,000 each **occurrence**
subject to a deductible of
NIL each **occurrence**

(both of the above limits are part of and not in
addition to the Limit of Liability set forth in
Coverage A, B, C or G as applicable)

**COVERAGE G** - LIABILITY ARISING OUT OF AIRPORT PREMISES:

SINGLE LIMIT BODILY INJURY AND
PROPERTY DAMAGE LIABILITY

$100,000,000 each **occurrence**

**COVERAGE H** -LIABILITY FOR SALE OF AIRCRAFT, AIRCRAFT PARTS OR SERVICES:

SINGLE LIMIT BODILY INJURY AND
PROPERTY DAMAGE LIABILITY

$100,000,000 each **occurrence**

**COVERAGE I** - LIABILITY ASSUMED BY THE NAMED INSURED:

SINGLE LIMIT BODILY INJURY AND
PROPERTY DAMAGE LIABILITY

$500,000,000 each **occurrence**
(as part of and not in addition to the Limit of
Liability set forth in Coverage A, B, C or G as
applicable)

**COVERAGE J** - VOLUNTARY SETTLEMENTS:

As respects any **scheduled aircraft** which is described in Item 4 below:

| | |
|---|---|
| Each **Crew Member**: | See Item 4 below. |
| Each **Passenger**: | See Item 4 below. |
| Each **Occurrence**: | See Item 4 below. |


GLOBAL AEROSPACE

Policy Number: 20009966-ON-21

**Declarations** (continued)

As respects any *temporary substitute aircraft* or any *scheduled aircraft* which is a *newly acquired aircraft*:

Regardless of the combined *crew member* and *passenger* seating capacity of such aircraft, the Coverage J Settlement Limits shall be the same as the highest of any Coverage J Settlement Limit for Each *Crew Member*, Each *Passenger* or Each *Occurrence* shown in Item 4 below.  However, if any Coverage J Settlement Limit for Each *Crew Member*, Each *Passenger* or Each *Occurrence* applicable to a *scheduled aircraft* is shown as NOT COVERED in Item 4 below, it shall likewise be NOT COVERED for any *temporary substitute aircraft* used in place of that *scheduled aircraft*.

# PART II - MEDICAL EXPENSES COVERAGE

**COVERAGE K** - MEDICAL EXPENSES:

As respects *scheduled aircraft*, *temporary substitute aircraft* or *non-owned aircraft*:

$10,000  each *crew member* or *passenger* each *occurrence*

As respects the *Named Insured's airport premises*:

$5,000 each person

$100,000 each *occurrence*

# PART III - PHYSICAL DAMAGE COVERAGES

**COVERAGE L** - PHYSICAL DAMAGE TO SCHEDULED AIRCRAFT - ALL RISKS OF LOSS:

The *insured value* of the *scheduled aircraft* subject to the deductibles shown in Item 4 below.

Unless otherwise agreed to by the Company, the *insured value* of any *scheduled aircraft* that has been modified or any *newly acquired aircraft* shall not exceed $10,000,000

**EXTRA EXPENSE PAYMENTS** (Applicable to Coverage L)

As respects expenses for a *temporary substitute aircraft*:

$5,000  each day

$300,000 each loss

(both payable in addition to the Limit of Liability set forth in Coverage L)



GLOBAL AEROSPACE

Policy Number: 20009966-ON-21

**Declarations** (continued)

As respects expenses for rental of temporary replacement component parts:

$50,000  each loss
(payable in addition to the Limit of Liability set forth in Coverage L)

As respects expenses for trip interruption:

$5,000  each *crew member* or *passenger* each loss
(payable in addition to the Limit of Liability set forth in Coverage L)

**COVERAGE M** -            PHYSICAL DAMAGE TO SPARE ENGINES, SPARE PARTS AND
                           MECHANICS' TOOLS - ALL RISKS OF LOSS:

As respects *spare engines* or *spare parts*:

The actual cash value of each *spare engine* or *spare part* subject to a maximum of
$2,000,000  each loss.

As respects *mechanics' tools*:

The actual cash value of *mechanics' tools* subject to a maximum of
$2,500 each loss and a deductible of $500 USD each loss.


**Item 4.**   DESCRIPTION OF INSURED AIRCRAFT:

See the Aircraft Schedule that follows Item 4.



Policy Number: 20009966-ON-21

**Declarations** (continued)

**Item 4:** Description of Insured Aircraft

### Aircraft Schedule

| Year, Make and Model | Registration | Insured Value | Deductibles: | | Seats: | | Coverage J Settlement Limits: | | |
| | | | In Motion | Not In Motion | Crew Member | Passenger | Each Crew Member | Each Passenger | Each Occurrence |
|---|---|---|---|---|---|---|---|---|---|
| 1989 McDonnell Douglas MD-87 | VP-CAA | $7,500,000 | $250,000 | $250,000 | 1 | 19 | $250,000 | $250,000 | $5,250,000 |



Policy Number: 20009966-ON-21

**Declarations** (continued)

**Item 5.**  AIRCRAFT USE:

All operations of the **Named Insured**.

**Item 6.**  PILOTS:

The policy shall not apply while a **scheduled aircraft** is in **flight** unless the **pilot in command** of the aircraft is:

As Approved by the Named Insured subject to aircraft flown by 2 crew at all times and each pilot doing annual re-currency training.

The pilot requirements do not apply while a **scheduled aircraft** is in the care, custody or control of a repair or maintenance facility.

The pilot requirements do not apply to a **non-owned aircraft** or a **temporary substitute aircraft**.

**Item 7.**  PREMIUM:

Total Premium at Inception:                              $63,875.00

The premium and rates for all aircraft insured by this policy, other than **newly acquired aircraft**, are as have been agreed upon.  As respects **newly acquired aircraft** or the modification of a **scheduled aircraft**, the premium and rates applying shall be as agreed upon between the **first Named Insured** and the Company.

**Item 8**  FUNDS

Unless otherwise indicated, all monetary references in this policy are expressed in the currency of United States of America.

IN WITNESS WHEREOF, the Company has caused this policy to be executed on its behalf by Global Aerospace Underwriting Managers (Canada) Limited, but this policy shall not be valid unless signed by a duly authorized representative of Global Aerospace Underwriting Managers (Canada) Limited.

Signed At Markham, Ontario
**Global Aerospace Underwriting Managers (Canada) Limited**
On Monday, November 15, 2021

By:_____
         Kevin Yuen, Executive Underwriter



Policy Number: 20009966-ON-21

**Various provisions in this policy may restrict or limit coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered. The Declarations, these provisions and endorsement(s) complete the policy.**

Words and phrases that appear in ***bold italicized*** type have special meaning. Refer to their definitions in the policy.

In consideration of the payment of the premium, in reliance upon the statements in the Declarations made a part hereof, subject to all of the terms of this policy including the applicable Limits of Liability, the Company agrees with the ***Named Insured*** as respects those coverages indicated in Item 3 of the Declarations as follows:

# PART I - LIABILITY COVERAGES

## INSURING AGREEMENTS

**COVERAGE A** - LIABILITY FOR SCHEDULED AIRCRAFT

The Company shall pay on behalf of the ***insured*** all sums which the ***insured*** shall become legally obligated to pay as damages because of ***bodily injury*** or ***property damage***, caused by an ***occurrence*** and arising out of the ownership, maintenance or use of the ***scheduled aircraft***, including the not-for-profit service of food and beverages on board the ***scheduled aircraft***.

**COVERAGE B -** LIABILITY FOR TEMPORARY SUBSTITUTE AIRCRAFT

The Company shall pay on behalf of the ***insured*** all sums which the ***insured*** shall become legally obligated to pay as damages because of ***bodily injury*** or ***property damage***, caused by an ***occurrence*** and arising out of ***temporary substitute aircraft***, including the not-for-profit service of food and beverages on board the ***temporary substitute aircraft***.

**COVERAGE C** - LIABILITY FOR NON-OWNED AIRCRAFT

The Company shall pay on behalf of the ***insured*** all sums which the ***insured*** shall become legally obligated to pay as damages because of ***bodily injury*** or ***property damage***, caused by an ***occurrence*** and arising out of ***non-owned aircraft***, including the not-for-profit service of food and beverages on board the ***non-owned aircraft***.

**COVERAGE D** - LIABILITY FOR DAMAGE TO AIRCRAFT THAT ARE NOT OWNED

1.  Notwithstanding the provisions of Exclusion (d) (APPLICABLE TO ALL PART I COVERAGES), the insurance afforded by Coverages B, C and G is extended to apply to ***property damage*** to any aircraft while in the care, custody or control of the ***Named Insured***.

2.  Coverage D is subject to the following provisions which are in addition to all other applicable provisions not herein amended:



PART I (Continued)

## EXCLUSIONS (Applicable to Coverage D)

This insurance does not apply:

(a)    to *property damage* to *scheduled aircraft*.

(b)    to *property damage* to any aircraft owned in whole or in part by or registered in the name of the *Named Insured*.

(c)    to *property damage* to any aircraft which is the subject of a lease or service agreement with the *Named Insured* for a period in excess of thirty (30) days; but this exclusion (c) does not apply to a *temporary substitute aircraft*.

(d)    to any aircraft, other than a *temporary substitute aircraft* or *non-owned aircraft*, while in *flight*.

(e)    to any *temporary substitute aircraft* or *non-owned aircraft* while in *flight* unless the *pilot in command* is employed as a pilot by the *Named Insured*, or has been approved by the *Named Insured's* Chief Pilot or that person's designated representative.


**COVERAGE E** - LIABILITY FOR DAMAGE TO AIRCRAFT HANGARS AND CONTENTS

Notwithstanding the provisions of Exclusion (d) (APPLICABLE TO ALL PART I COVERAGES), the insurance afforded by Coverages A, B, C and G is extended to apply to *property damage* to aircraft hangars (or portions thereof), or the contents thereof (excluding aircraft or *cargo*) in the care, custody or control of the *insured*.


**COVERAGE F** - LIABILITY FOR DAMAGE TO PERSONAL EFFECTS AND CARGO

1.    Notwithstanding the provisions of Exclusion (d) (APPLICABLE TO ALL PART I COVERAGES), the insurance afforded by Coverages A, B, C and G is extended to apply to *property damage* to the following property while in the care, custody or control of the *insured*:

(a)    *personal effects* of *crew members* and *passengers*; and

(b)    *cargo*.

2.    Coverage F is subject to the following provisions which are in addition to all other applicable provisions not herein amended:

## EXCLUSIONS (Applicable to Coverage F)

As respects *property damage* to *cargo*, this insurance does not apply:

(a)    to accounts, deeds, evidences of debt, mail, money, notes, securities, bullion, credit cards, furs, fur garments, jewelry, precious stones, valuable papers and records, paintings, statuary or other works of art, or other articles of extraordinary value.

(b)    to baggage, luggage, wearing apparel or other *personal effects* of *crew members* or *passengers*.

(c)    to live animals, birds, reptiles, fish or plants.



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

**PART I** (Continued)

(d)  to any property in storage whether incidental to transportation or not, except property that is temporarily stored at the **Named Insured's airport premises** prior to being loaded on or after being unloaded from an aircraft.

(e)  to claims or **suits** arising out of, caused by or resulting from:

   (1)  delay, loss of market, loss of use, or any consequential loss;

   (2)  gradual deterioration, moths, vermin, inherent vice, marring or scratching;

   (3)  strikes, lockouts, labor disturbances, riots, civil commotion, or the acts of any person or persons taking part in any such strike, lockout, labor disturbance, riot, civil commotion or disorder;

   (4)  misappropriation, secretion, conversion, infidelity or any dishonest act on the part of the **insured** or any of its agents or employees; or

   (5)  any deviation from a contract of affreightment or any cost or expense of investigating or settling any claim or investigating, defending or settling any **suit** arising out of such a deviation.


**COVERAGE G** - LIABILITY ARISING OUT OF AIRPORT PREMISES

1.  The Company shall pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury** or **property damage**, caused by an **occurrence** and arising out of the ownership, maintenance or use of **airport premises**.  Use includes:

(a)  the operation of an **auto** on **airport premises**,

(b)  the operation of **mobile equipment**; and

(c)  the not-for-profit service of food and beverages on **airport premises**.

2.  Coverage G is subject to the following provision which is in addition to all other applicable provisions not herein amended:

**EXCLUSION** (Applicable to Coverage G)

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment of any **auto** owned or operated by or on behalf of or rented or loaned to any **insured** while the **auto** is on public roadways or public parking areas that are on **airport premises** or any other location that is off **airport premises**.


**COVERAGE H** - LIABILITY FOR SALE OF AIRCRAFT, AIRCRAFT PARTS OR SERVICES

1.  The Company shall pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury** or **property damage**, caused by an **occurrence** and arising out of:

(a)  aircraft that the **Named Insured** has either sold or relinquished from an exclusive written lease; or

(b)  materials, parts, equipment, fuel, lubricants or services for aircraft of others provided or performed by the **Named Insured** on a not-for-profit basis,



Aircraft - BH  (Rev. 01/01/2007)

3

**PART I** (Continued)

but only if the **bodily injury** or **property damage** occurs away from the **Named Insured's airport premises** after physical possession of such aircraft, materials, parts, equipment, fuel or lubricants has been relinquished to others and any services have been completed.

2.  Coverage H is subject to the following provisions which are in addition to all other applicable provisions not herein amended:

**EXCLUSION** (Applicable to Coverage H)

This insurance does not apply to liability for **bodily injury** or **property damage** arising out of the sale or relinquishment from an exclusive written lease of aircraft, if the **insured** is in the business of the manufacture, distribution or sale of aircraft.

**COVERAGE I** - LIABILITY ASSUMED BY THE NAMED INSURED

1.  Exclusion (a) (APPLICABLE TO ALL PART I COVERAGES) does not apply to the assumption by the **Named Insured** of the liability of others for **bodily injury** or **property damage** in any written contract or written agreement applicable to **scheduled aircraft**, **temporary substitute aircraft** or **non-owned aircraft** for which insurance is afforded by Coverage A, B or C, and **airport premises** for which insurance is afforded by Coverage G, provided that the **Named Insured** submits a copy of all such agreements to Global Aerospace Underwriting Managers (Canada) Limited within a reasonable time after coming to the attention of the **Named Insured** or its Insurance Department, if any.  The Company reserves the right to charge an additional premium for any such agreement.  The Company hereby waives the submission requirement as respects temporary aircraft storage and minor servicing agreements, **military or governmental agreements**, lease of **airport premises** agreements and agreements approved by the Company prior to the effective date of this policy.

2.  Coverage I is subject to the following provisions which are in addition to all other applicable provisions not herein amended:

**EXCLUSIONS** (Applicable to Coverage I)

This insurance does not apply to liability assumed:

(a)  in any oral contract or oral agreement.

(b)  in any written contract or written agreement:

(1)  with or for the benefit of **crew members**, **passengers** or their heirs; or

(2)  insofar as it pertains to major alterations or major repairs to aircraft as defined in the **Federal Aviation Administration** regulations; or

(3)  as respects the purchase or sale of aircraft.



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

**PART I** (Continued)

**COVERAGE J** - VOLUNTARY SETTLEMENTS

1. Irrespective of legal liability, the Company shall offer to pay on behalf of the *insured*, at the request of the *Named Insured*, benefits set forth in paragraph 2 below, to or for the benefit of each *crew member* or *passenger* who sustains *bodily injury* caused by an *occurrence* arising out of the ownership, maintenance or use of *scheduled aircraft* or *temporary substitute aircraft*.

2. If such *bodily injury*, directly and independently of all other causes, results:

   (a) within one (1) year of the *occurrence,* in the death of the *crew member* or *passenger* or, if not in the death of the *crew member* or *passenger*, in injury involving two (2) or more of the following:

       (1) severance of a hand at or above the wrist,

       (2) severance of a foot at or above the ankle, or

       (3) entire and irrecoverable loss of sight in an eye,

       then the Company shall offer to pay the sum requested by the *Named Insured* but not exceeding the applicable Coverage J Settlement Limit for Each *Crew Member* or Each *Passenger* set forth in the Declarations.  Should injury (as described in either (1), (2) or (3) above) be limited to only one hand, foot or eye, then the Company shall offer to pay the sum requested by the *Named Insured* but not exceeding one-half (1/2) of the applicable Coverage J Settlement Limit for Each *Crew Member* or Each *Passenger* set forth in the Declarations.

   (b) in the injured *crew member* or *passenger* becoming completely disabled from performing each and every duty pertaining to their occupation, the Company shall, within thirty (30) days of payment, reimburse the *Named Insured* for payments made to the injured *crew member* or *passenger* for loss of earnings as a result of such disability, but not exceeding:

       (1) eighty (80) percent of the average weekly wage of the injured *crew member* or *passenger* based upon the twelve (12) month period immediately preceding the date of *occurrence*, or

       (2) one-half (1/2) of one percent (1%) of the applicable Coverage J Settlement Limit for Each *Crew Member* or Each *Passenger* set forth in the Declarations,

       whichever is the least, per week, for the period of such continuous and complete disability from performing each and every duty pertaining to their occupation up to a maximum of one hundred four (104) consecutive weeks.

   (c) in the inability of the injured *crew member* or *passenger* after twelve (12) months of being continuously and completely disabled from performing each and every duty pertaining to their occupation, to perform each and every duty pertaining to any occupation or employment for wage or profit for the rest of their life, then the Company shall offer to pay the sum requested by the *Named Insured* but not exceeding the applicable Coverage J Settlement Limit for Each *Crew Member* or Each *Passenger* set forth in the Declarations.

3. The amount otherwise due and payable as benefits set forth in paragraph 2 above shall be reduced by the amount of any payments previously made in accordance with the provisions of Coverage J to or for the same *crew member* or *passenger* as a result of any one *occurrence*.

4. Coverage J is subject to the following provisions which are in addition to all other applicable provisions not herein amended:



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

PART I (Continued)

## LIMITS OF LIABILITY (Applicable to Coverage J)

The Coverage J Settlement Limits set forth in the Declarations are included in and are a part of the Company's Limits of Liability set forth in Item 3 of the Declarations for Coverage A or B as applicable, and are not in addition thereto.

The Company's Limit of Liability as set forth in Coverage A or B, as applicable, for each **occurrence** shall be reduced by the amount of payments made in accordance with the provisions of this Coverage J to or for all **crew members** or **passengers** as the result of each **occurrence**.

The total amount which the Company shall offer to pay to or for the benefit of any one injured **crew member** or **passenger** shall not exceed the amount set forth in the Declarations as the Coverage J Settlement Limit applicable to Each **Crew Member** or Each **Passenger** respectively. The total amount which the Company shall offer to pay to or for the benefit of two (2) or more injured **crew members** or **passengers** in each **occurrence** shall not exceed the amount set forth in the Declarations as the Coverage J Settlement Limit applicable to Each **Occurrence**. Payment of any amount to or for any injured **crew member** or **passenger** in accordance with the provisions of Coverage A or B, as applicable, shall operate to terminate the Company's obligations set out in this Coverage J as respects such **crew member** or **passenger**.

## CONDITIONS (Applicable to Coverage J)

1.  **Liability Release Required**.

    Except as respects benefits payable in accordance with the provisions of paragraph 2 (b) above, no payment shall be made until the injured **crew member** or **passenger** and all persons claiming by, through or under said **crew member** or **passenger** shall have executed, in a form acceptable to the Company, a full and final release for damages for which insurance is afforded by Coverage A or B.

2.  **No Admission**.

    No offer, payment or acceptance of benefits in accordance with the provisions of Coverage J shall constitute an admission of liability or any other type of admission whatsoever on the part of the Company or of the **insured**.

3.  **Physical Examinations and Reports**.

    The injured **crew member** or **passenger** or someone on that person's behalf shall, at the request of the Company, furnish reasonably obtainable information pertaining to the injuries and execute authorization to enable the Company to obtain medical reports and copies of records. The injured **crew member** or **passenger** shall submit to physical examination by physicians selected by the Company when and as often as the Company may reasonably require.

4.  **Provisions Applicable**.

    All policy provisions applicable to Coverage A or B shall apply to the insurance afforded by this Coverage J except the Limits of Liability (APPLICABLE TO ALL PART I COVERAGES) and Exclusion (c) (APPLICABLE TO ALL PART I COVERAGES).



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

**PART I** (Continued)

5.  **Refusal to Accept Offer**.

If the injured *crew member* or *passenger* and all persons having a claim by, through or under such *crew member* or *passenger* refuse to accept the sum offered, or fail to execute the required release within ninety (90) days of the date of the offer, or if claim is made or if *suit* is brought against an *insured* for such *bodily injury*, then this Coverage J shall become null and void as respects such *crew member* or *passenger* and the provisions of Coverage A or B shall apply.

6.  General Policy Condition 10. **Other Insurance** is amended to read as follows:

If any other Voluntary Settlement insurance (or Crew Member, Passenger or Guest Voluntary Settlement insurance) is available to or for the benefit of the injured *crew member* or *passenger* and shall have been written through Global Aerospace Underwriting Managers (Canada) Limited or any of its subsidiaries or subsidiaries thereof, the Coverage J Settlement Limits specified in the Declarations of this policy shall be reduced by the amount of such other insurance.

## EXCLUSIONS
### (APPLICABLE TO ALL PART I COVERAGES UNLESS OTHERWISE INDICATED)

This insurance does not apply:

(a)  to liability assumed by the *insured* in a contract or agreement.

This exclusion (a) does not apply to:

(1)  liability for damages that the *insured* would have in the absence of the contract or agreement; or

(2)  liability assumed by the *Named Insured* for which insurance is afforded by Coverage I.

(b)  to any obligation for which the *insured* or any carrier as the *insured's* insurer may be held liable under any worker's compensation, unemployment compensation or disability benefits law, or under any similar law.

(c)  to *bodily injury* to:

(1)  an employee of the *insured* arising out of and in the course of employment by the *insured*; or

(2)  the spouse, child, parent, brother or sister of that employee as a consequence of (c)(1) above.

This exclusion (c) applies:

(1)  whether the *insured* may be liable as an employer or in any other capacity; and

(2)  to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion (c) does not apply to liability assumed by the *Named Insured* for which insurance is afforded by Coverage I; or to the insurance afforded by Coverage J.



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

PART I (Continued)

(d)  to **property damage** to property owned, occupied, rented or used by the **insured** or in the care, custody or control of the **insured** or as to which the **insured** is for any purpose exercising physical control, except as afforded by Coverages D, E and F.

(e)  to **bodily injury** or **property damage** arising out of:

(1)  noise, whether or not it is audible to the human ear, or vibration, including sonic boom or similar phenomena caused by the movement or operation of an aircraft or any of its parts; or

(2)  any interference with the quiet enjoyment of property of others caused by the operation of an aircraft or any of its parts.

(f)  to **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

(1)  that are in or upon an aircraft;

(2)  that are contained in any property that is in or upon an aircraft.

Exclusions (e) and (f) above do not apply to **bodily injury** or **property damage** caused by or resulting from crash, fire, explosion, collision or a recorded in **flight** emergency causing abnormal operation involving any **scheduled aircraft**, **temporary substitute aircraft** or **non-owned aircraft**.

(g)  to **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

(1)  at or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any **insured**;

(2)  at or from any premises, site or location that is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

(3)  which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **insured** or any person or organization for whom any **insured** may be legally responsible; or

(4)  at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

(i)  if the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

(ii)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**.

Subparagraphs (g) (I) and (g) (4) (i) do not apply to **bodily injury** or **property damage** arising out of heat, smoke or fumes from a hostile fire.  In this exclusion (g), a hostile fire means one that becomes uncontrollable or breaks out from where it is intended to be.



GLOBAL AEROSPACE

PART I (Continued)

(h) to any loss, cost, or expense arising out of any:

(1) request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**; or

(2) claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **pollutants**,

unless resulting from crash, fire, explosion, collision or a recorded in **flight** emergency causing abnormal operation involving any **scheduled aircraft**, **temporary substitute aircraft** or **non-owned aircraft**.

(i) to liability for **bodily injury** or **property damage** which arises from the manufacture, sale, handling, distribution or disposal of goods or products by the **Named Insured** or by others trading under its name or from services performed by or on behalf of the **Named Insured**, including any materials, parts or equipment furnished in connection with such services; but this exclusion (i) does not apply:

(1) to **scheduled aircraft** or to **temporary substitute aircraft**;

(2) as respects the not-for-profit service of food and beverages on board a **scheduled aircraft, temporary substitute aircraft** or **non-owned aircraft** or on **airport premises**; or

(3) to the insurance afforded by Coverage H.

(j) to **bodily injury** to:

(1) a person arising out of any:

(i) refusal to employ that person;

(ii) termination of that person's employment; or

(iii) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) the spouse, child, parent, brother or sister of that person as a consequence of **bodily injury** to that person at whom any of the employment-related practices described in subparagraphs (j) (1) (i), (ii) or (iii) above is directed.

This exclusion (j) applies:

(1) whether the **insured** may be liable as an employer or in any other capacity; and

(2) to any obligation to share damages with or repay someone else who must pay damages because of the injury.



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

PART I (Continued)

## DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS
### (APPLICABLE TO ALL PART I COVERAGES)

1. The Company shall have the right and duty to defend the *insured* against any *suit* seeking damages on account of *bodily injury* or *property damage* to which this insurance applies.  However, the Company will have no duty to defend the *insured* against any *suit* seeking damages for *bodily injury* or *property damage* to which this insurance does not apply.  The Company may, at its discretion, investigate any *occurrence* and settle any claim or *suit* that may result.  But:

   (a) the amount the Company will pay for damages is limited as described in the Limits of Liability section of PART I - LIABILITY COVERAGES; and

   (b) the Company's right and duty to defend end when it has used up the applicable limit of liability in the payment of judgments or settlements for *bodily injury* or *property damage* to which this insurance applies.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for in paragraphs 2, 3 and 4 below.

2. In addition to the applicable limits of liability, the Company will pay, as respects any claim against an *insured* it investigates or settles, or any *suit* against an *insured* it investigates, defends or settles:

   (a) all expenses incurred by the Company.

   (b) up to $2,500 for the cost of bail bonds required because of *occurrences* or violations of laws or regulations for civil aviation arising out of the use of *scheduled aircraft*, *temporary substitute aircraft* or *non-owned aircraft* to which insurance for *bodily injury* is afforded by Coverages A, B or C. The Company does not have to furnish these bonds.

   (c) the cost of bonds to release attachments but only for bond amounts within the applicable limit of liability. The Company does not have to furnish these bonds.

   (d) all reasonable expenses incurred by the *insured* at the Company's request to assist the Company in the investigation or settlement of the claim or the investigation, defense or settlement of the *suit*, including actual loss of earnings up to $250 per day, per employee because of time off from work.

   (e) all costs taxed against the *insured* in the *suit*.

   (f) prejudgment interest awarded against the *insured* on that part of the judgment the Company pays.  If the Company makes an offer to pay the applicable limit of liability, it will not pay any prejudgment interest based on that period of time after the offer.

   (g) all interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of liability.

   (h) expenses incurred by the *insured* for first aid administered to others at the time of accident for *bodily injury* to which this insurance applies.

**GLOBAL AEROSPACE**

Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

PART I (Continued)

3.  Subject to the provisions of paragraph 4 below, the Company shall pay, as respects any **scheduled aircraft**, **temporary substitute aircraft** or **non-owned aircraft**:

(a)  expenses incurred by the **insured** under emergency conditions for charges made by other than an **insured** but limited to those expenses associated with labor, materials, rental of equipment, vehicles or tools for:

   (1)  application of foam on a runway;

   (2)  fire and crash control and rescue; or

   (3)  any precautionary off-airport landing.

(b)  expenses incurred by the **insured** for search and rescue operations connected with any such aircraft which is missing and presumed crashed, provided such expenditures are agreed to in advance by the Company.

4.  The amounts payable by the Company in accordance with paragraphs 3 (a) and 3 (b) above:

(a)  are payable in addition to the Company's Limits of Liability;

(b)  are subject to the limits set forth in Item 3 of the Declarations; and

(c)  do not include payments for:

   (1)  any medical, hospital or funeral expense;

   (2)  loss or damage to equipment used in search and rescue operations;

   (3)  **bodily injury** sustained by any person;

   (4)  expense incurred after it has been reasonably established that there are no survivors; or

   (5)  any expense for salvage of all or part of such **scheduled aircraft**, **temporary substitute aircraft** or **non-owned aircraft**.

## LIMITS OF LIABILITY
### (APPLICABLE TO ALL PART I COVERAGES UNLESS OTHERWISE INDICATED)

1.  **Severability of Interests**

   The insurance afforded applies separately to each **insured** against whom claim is made or **suit** is brought, except as respects the limits of the Company's liability.

2.  **Total Liability**

   Irrespective of the number of (1) persons or organizations who are **insureds**, (2) persons or organizations who sustain **bodily injury** or **property damage**, or (3) claims made or **suits** brought on account of **bodily injury** or **property damage**, the Company's liability is limited as follows:

   The total liability of the Company for all damages because of **bodily injury** or **property damage** sustained by one or more persons or organizations as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to each **occurrence**.



Aircraft - BH  (Rev. 01/01/2007)

**PART I** (Continued)

For the purpose of determining the limit of the Company's liability, all *bodily injury* and *property damage* arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence.*

# PART II - MEDICAL EXPENSE COVERAGE

## INSURING AGREEMENT

**COVERAGE K** - MEDICAL EXPENSES

1.  As respects *scheduled aircraft*, *temporary substitute aircraft* or *non-owned aircraft*:

    The Company shall pay all reasonable *medical expenses* incurred within one (1) year from the date of injury, to or for each *crew member* or *passenger* who sustains *bodily injury* caused by an *occurrence*, provided the *scheduled aircraft*, *temporary substitute aircraft* or *non-owned aircraft* is being used by or with the permission of the *Named Insured*.

2.  As respects the *Named Insured's airport premises*:

    The Company shall pay all reasonable *medical expenses* incurred within one (1) year from the date of injury, to or for each person who sustains *bodily injury* caused by an *occurrence* while on the *Named Insured's airport premises*.

## EXCLUSION
(APPLICABLE TO COVERAGE K)

This insurance does not apply to *medical expenses* incurred by or for any employee of the *insured* to the extent that any such expenses are payable under any worker's compensation or disability benefits law, or under any similar law.

## LIMITS OF LIABILITY
(APPLICABLE TO COVERAGE K)

1.  As respects *scheduled aircraft*, *temporary substitute aircraft* or *non-owned aircraft*:

    The total liability of the Company for all *medical expenses* incurred by or on behalf of each *crew member* or *passenger* who sustains *bodily injury* as the result of any one *occurrence* shall not exceed the limit of liability stated in the Declarations as applicable to each *crew member* or *passenger*.

2.  As respects the *Named Insured's airport premises*:

    The total liability of the Company for all *medical expenses* incurred by or on behalf of each person as the result of any one *occurrence* shall not exceed the limit of liability stated in the Declarations as applicable to each person.  The total liability of the Company for all *medical expenses* incurred by or on behalf of two or more persons as the result of any one *occurrence* shall not exceed the limit of liability stated in the Declarations as applicable to each *occurrence*.



**PART II** (Continued)

## CONDITION
(APPLICABLE TO COVERAGE K)

**Medical Reports: Proof and Payment of Claim.**

As soon as practicable the injured person or someone on that person's behalf shall give to the Company written proof of claim, under oath if required, and shall, after each request from the Company, execute authorization to enable the Company to obtain medical reports and copies of records.  The injured person shall submit to physical examination by physicians selected by the Company when and as often as the Company may reasonably require. The Company may pay the injured person or any person or organization rendering the services and such payment shall reduce the amount payable for such injury.  Payment for ***medical expenses*** shall not constitute an admission of liability of any person or organization or of the Company.



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

# PART III – PHYSICAL DAMAGE COVERAGES

## INSURING AGREEMENTS

**COVERAGE L** - PHYSICAL DAMAGE TO SCHEDULED AIRCRAFT - ALL RISKS OF LOSS

1.  The Company shall pay for **physical damage** to the **scheduled aircraft** including **disappearance** of the **scheduled aircraft**.

2.  Coverage L is subject to the following provisions which are in addition to all other applicable provisions not herein amended:

### EXTRA EXPENSE PAYMENTS (Applicable to Coverage L)

1.  Subject to the provisions of paragraph 2 below, when a **scheduled aircraft** sustains **physical damage** to which Coverage L applies, the Company shall also reimburse the **Named Insured** for expenses arising out of:

    (a)  a **temporary substitute aircraft**, except any

        (1)  expense incurred after completion of repairs to the **scheduled aircraft** which sustained **physical damage** or after such repairs could have been completed but for work being done which is not necessary to the repair; or

        (2)  expense incurred more than five (5) days after the Company has tendered payment for a **total loss** or in any event more than sixty (60) days after **physical damage** was sustained.

    (b)  rental of temporary replacement component part(s), provided

        (1)  the component part(s) which sustained **physical damage** is repairable, and

        (2)  the temporary replacement component part(s) is not the subject of an existing aircraft component lease or exchange agreement or in the **Named Insured's** possession as a **spare engine** or **spare part**.

    (c)  trip interruption expenses for food, travel and lodging of **crew members** and **passengers**, but only those reasonable expenses required to continue on from the place where **physical damage** to the **scheduled aircraft** was sustained to either the intended destination or the original point of departure.

2.  Expenses incurred as a result of **physical damage** sustained during the policy period shall be deemed to have been incurred during the policy period. The Company's obligation to reimburse the **Named Insured** is limited to the lesser of:

    (a)  that portion of the necessary and reasonable expenses incurred by the **Named Insured** which exceed those which the **Named Insured** would have incurred had there been no **physical damage** to the **scheduled aircraft**; or

    (b)  the Extra Expense Payment Limits set forth in Item 3 of the Declarations.

**COVERAGE M** - PHYSICAL DAMAGE TO SPARE ENGINES, SPARE PARTS AND MECHANICS' TOOLS - ALL RISKS OF LOSS

The Company shall pay for **physical damage** to **spare engines** or **spare parts** which are owned by the **Named Insured** or for which the **Named Insured** is legally responsible but only to the extent of the **Named Insured's** financial interest in such **spare engines** or **spare parts**. The Company shall also pay for **physical damage** to **mechanics' tools** owned by mechanics employed by the **Named Insured.**



PART III (Continued)

# EXCLUSIONS
## (APPLICABLE TO ALL PART III COVERAGES)

This insurance does not apply to **physical damage**:

(a)    to tires caused by any peril other than fire, theft, vandalism or malicious mischief.

(b)    caused by and confined to:

    (1)    wear and tear,

    (2)    deterioration, or

    (3)    mechanical or electrical breakdown, failure or malfunction.

    When used in this exclusion (b) in connection with an aircraft engine, **spare engine** or auxiliary power unit, the breakdown, failure or malfunction of any component, accessory or part thereof shall be considered breakdown, failure or malfunction of the entire engine or unit and any resulting **physical damage** to the engine or unit shall also be considered to be "mechanical or electrical breakdown, failure or malfunction."

(c)    to aircraft engines, **spare engines** and auxiliary power units caused by:

    (1)    foreign object damage (damage caused by object(s) not a part of the engine or unit or the accessories of either) whether resulting from ingestion or otherwise; or

    (2)    heat which results from the operation, attempted operation or shutdown of the engine or unit.

    Paragraph (1) of this exclusion (c) does not apply if such **physical damage** is the result of a single incident sustained during the policy period which is of sufficient severity, when such **physical damage** is discovered, to require immediate repairs in compliance with the requirements of the aircraft engine, **spare engine** or auxiliary power unit manufacturer.

Exclusions (a), (b) and (c) do not apply if such **physical damage** is coincident with and the direct result of other **physical damage** covered by this policy.

# LIMITS OF LIABILITY
## (APPLICABLE TO ALL PART III COVERAGES)

1.    In the event of a **total loss** the Company shall pay the **insured value** of the **scheduled aircraft** less any applicable deductible whereupon the Company's liability as respects such **scheduled aircraft** shall terminate.

2.    In the event of a **partial loss** the Company's liability shall not exceed the **cost to repair** the **scheduled aircraft**, less any applicable deductible, but in no event shall the Company's liability for a **partial loss** exceed the amount for which the Company would be liable if the **scheduled aircraft** were a **total loss**.

3.    In the event of **physical damage** to **spare engine(s)**, **spare part(s)** or **mechanics' tools**:

    (a)    an adjustment for depreciation and physical condition will be made in determining the actual cash value at the time of loss; and

    (b)    the Company shall pay, subject to any applicable deductible, the lesser of:

        (1)    the **cost to repair**;

        (2)    the actual cash value as of the time of **physical damage**; or

        (3)    the applicable limit of liability set forth in the Declarations for each **spare engine** or **spare part** or for **mechanics' tools**.

4.    The Company's liability to pay for **physical damage** to **spare engine(s)**, **spare part(s)** or **mechanics' tools** shall terminate upon any payment made therefor in accordance with the provisions of subparagraphs 3 (b) (2) or (3) above.



PART III (Continued)

# CONDITIONS
## (APPLICABLE TO ALL PART III COVERAGES)

1. **Additional Duties of the Named Insured.**

   The ***Named Insured*** shall:

   (a) protect the damaged property whether or not Coverage L or M of this policy applies and if the ***Named Insured*** does not, the Company shall have no obligation to pay for any further ***physical damage*** due to the ***Named Insured's*** failure to protect the damaged property; reasonable expenses incurred in affording such protection shall be deemed to be incurred at the Company's request;

   (b) file with the Company within ninety-one (91) days after ***physical damage*** or the end of the ***disappearance*** waiting period, sworn proof of loss in such form and including such information as the Company may reasonably require and shall, upon the Company's request, submit to examination under oath, exhibit the damaged property and produce for the Company's examination all pertinent records and invoices, permitting copies of such documents to be made, all at such reasonable times and places as the Company shall designate; and

   (c) do all things necessary to arrange for transfer of its interest in any salvage to the Company or its nominee if a ***scheduled aircraft*** is a ***total loss*** or if the ***cost to repair*** a ***spare engine***, ***spare part*** or ***mechanics' tool*** equals or exceeds its actual cash value.

2. **Adjustment and Payment.**

   Unless otherwise provided by policy endorsement:

   (a) the ***cost to repair*** the ***physical damage*** for which insurance is afforded by Coverage L or M will be adjusted with the ***first Named Insured*** only; and

   (b) any payment for ***physical damage*** made by the Company shall be made to the ***first Named Insured*** for the account of all interests.

3. **Application of Deductible.**

   Except as respects the insurance afforded for ***mechanics' tools***, the amount specified as a deductible does not apply to ***physical damage*** caused by fire, lightning, explosion, transportation, theft, robbery or pilferage; however, ***physical damage*** caused by fire or explosion resulting directly or indirectly from collision of the ***scheduled aircraft*** while ***in motion*** shall be subject to the ***in motion*** deductible, if any. In the event that two (2) or more ***scheduled aircraft*** are covered by this policy, the applicable deductible shall apply separately to each.

4. **Appraisal.**

   If the ***first Named Insured*** and the Company fail to agree as to the ***cost to repair*** the ***physical damage***, either may, within sixty (60) days after proof of loss is filed, demand an appraisal. In such event, the ***first Named Insured*** and the Company shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall appraise the ***cost to repair*** the ***physical damage*** and failing to agree shall submit their differences to the umpire. An award in writing of any two (2) shall determine the ***cost to repair*** the ***physical damage***. The ***first Named Insured*** and the Company shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and the umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.



GLOBAL AEROSPACE

**PART III** (Continued)

5. **Automatic Increase in Insured Value of Scheduled Aircraft.**

In the event of the modification of a *scheduled aircraft*, including but not limited to the installation or replacement of equipment thereon, the *insured value* of the *scheduled aircraft* shall automatically increase to reflect the additional cost, if any, of such modification, provided the *Named Insured* notifies Global Aerospace Underwriting Managers (Canada) Limited of such increase in the *insured value* within sixty (60) days following the completion of such modification. However, any such increased *insured value* is subject to the maximum allowable amount set forth in Item 3 of the Declarations as part of the Company's Limit of Liability for Coverage L.

6. **Automatic Reinstatement.**

In the event of a *partial loss*, whether or not Coverage L of this policy applies, the *insured value* of the *scheduled aircraft* shall be reduced as of the time of *physical damage* by the *cost to repair* the *physical damage*. Upon the commencement of repairs, the *insured value* shall be increased by the value of the completed repairs until the *insured value* of the *scheduled aircraft* is fully restored or this policy terminates, whichever occurs first.

7. **No Benefit to Others.**

No person or organization, other than the *Named Insured*, having custody of property insured by Coverage L or M will benefit from this insurance.

8. **Return of Unearned Premium After Total Loss.**

In the event of a *total loss* to a *scheduled aircraft*, after the Company has paid the *insured value* less any applicable deductible, the Company shall also refund the pro-rata unearned premium for such *scheduled aircraft*.

9. **Salvage.**

The Company shall receive the benefit of all salvaged property, however, there shall be no abandonment without consent of the Company.

10. **Stolen Property.**

Stolen property which has been recovered before the Company has made payment in accordance with the provisions of Coverage L or M may be returned to the *Named Insured*. If the Company returns the property, it shall pay the *cost to repair* the *physical damage*, if any, resulting from the theft.



GLOBAL AEROSPACE

Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

# POLICY EXCLUSIONS – GENERAL

1.  **War, Hi-jacking and Other Perils Exclusion**.

    This policy does not cover claims or *suits* caused by

    (a)   war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power.

    (b)   any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

    (c)   strikes, riots, civil commotions or labor disturbances.

    (d)   any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the loss or damage resulting therefrom is accidental or intentional.

    (e)   any malicious act or act of sabotage.

    (f)   confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government (whether civil, military or de facto) or public or local authority.

    (g)   hi-jacking or any unlawful seizure or wrongful exercise of control of the aircraft or any of its *crew members* in *flight* (including any attempt at such seizure or control) made by any person or persons on board the aircraft acting without the consent of the *Named Insured*.

    Furthermore, this policy does not cover claims or *suits* arising while the aircraft is outside the control of the *Named Insured* by reason of any of the above perils.  The aircraft shall be deemed to have been restored to the control of the *Named Insured* on the safe return of the aircraft to the *Named Insured* at an airfield not excluded by the geographical limits of this policy, and entirely suitable for the operation of the aircraft (such safe return shall require that the aircraft be parked with engines shut down and under no duress).

2.  **Radioactive Contamination Exclusion.**

    This policy does not cover

    (a)   loss or destruction of or damage to any property (including aircraft) whatsoever or any loss or expense whatsoever resulting or arising therefrom

    (b)   any legal liability or *medical expenses* of whatsoever nature

    directly or indirectly caused or contributed to by or arising from ionizing radiations or contamination by radioactivity from any source whatsoever.



GLOBAL AEROSPACE

## POLICY EXCLUSIONS – GENERAL (Continued)

Loss, destruction, damage, expense or legal liability which, but for the provisions of the preceding paragraph of this exclusion, would be covered by this policy, and is directly or indirectly caused or contributed to by or arises from ionizing radiations or contamination by radioactivity from any radioactive materials in the course of carriage as *cargo* under International Air Transport Association regulations or the regulations of the duly constituted governmental authority having jurisdiction over the transportation of radioactive materials, shall (subject to all the other provisions of this policy) be covered, provided that:

(a)   it shall be a condition precedent to the liability of the Company that the carriage of any radioactive materials shall in all respects comply with the current regulations issued by the International Air Transport Association or the duly constituted governmental authority having jurisdiction relating to the carriage of restricted articles by air;

(b)   this policy shall only apply to any claim or *suit* made against the *insured* arising out of any accident or incident occurring during the period of this insurance and any such claim by the *insured* against the Company or by any claimant against the *insured* shall have been made within three years after the date of the *occurrence* giving rise to the claim or *suit*;

(c)   in the case of any *physical damage* claim by virtue of this paragraph, the level of contamination shall have exceeded the maximum permissible level set out in the following scale:

| EMITTER | MAXIMUM PERMISSIBLE LEVEL OF NON-FIXED RADIOACTIVE SURFACE CONTAMINATION |
| --- | --- |
| (IAEA Health and Safety Regulations in accordance with the current ICAO Technical Instructions for the Safe Transport of Dangerous Goods by Air) | (Averaged over 300 cm$^2$) |
| Beta, gamma and low toxicity alpha emitters | Not exceeding 4 Bequerels/cm$^2$ ($10^{-4}$ microcuries/cm$^2$) |
| All other alpha emitters | Not exceeding 0.4 Bequerels/cm$^2$ ($10^{-5}$ microcuries/cm$^2$) |

(d)   the coverage afforded by this paragraph may be cancelled at any time by the Company giving seven (7) days notice of cancellation.



GLOBAL AEROSPACE

Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

# POLICY DEFINITIONS – GENERAL

When appearing in this policy:

"***Airport Premises***" means such portions of airports or heliports and buildings thereon as are used by the ***Named Insured*** in connection with the storage, maintenance or operation of aircraft.

"***Auto***" means a vehicle that is registered in conformity with a motor vehicle registration law for use on public roads.

"***Bodily Injury***" means:

(a)   physical:

    (1)   injury,

    (2)   sickness, or

    (3)   disease; or

(b)   mental anguish

sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

"***Cargo***" means property, other than ***personal effects***, while being loaded, unloaded or carried on board a ***scheduled aircraft***, ***temporary substitute aircraft*** or ***non-owned aircraft*** or while temporarily stored at the ***Named Insured's airport premises***. Cargo does not include property installed on a ***scheduled aircraft***, ***temporary substitute aircraft*** or ***non-owned aircraft***.

"***Cost to repair***" means the sum of the cost, where necessary, of transporting new or damaged parts or of transporting the damaged ***scheduled aircraft***, ***spare engine(s)***, ***spare part(s)*** or ***mechanics' tools*** to the place of repair and return to the place of accident or home airport or heliport, whichever is nearer, by the least expensive reasonable means and

(a)   if repairs are made by the ***Named Insured***:

    (1)   the actual cost of materials and parts of like kind and quality,

    (2)   actual straight time wages paid for labor, and

    (3)   reasonable overhead; or

(b)   if repairs are not made by the ***Named Insured***, the actual cost of repairing the damaged property with materials and parts of like kind and quality with charges for labor at straight time rates.



## POLICY DEFINITIONS – GENERAL (Continued)

"*Crew Member*" means any person in, on or boarding an aircraft for the purpose of assisting in the operation of the aircraft or alighting therefrom after a ride, *flight* or attempted *flight* therein.

"*Disappearance*" means missing and not reported for thirty (30) days after the commencement of a *flight*, and shall be considered a *total loss*.

"*Federal Aviation Administration*" means the duly constituted authority of the United States of America having jurisdiction over civil aviation, or its duly constituted equivalent in any other country.

"*First Named Insured*" means the first person or organization named in Item 1 (a) of the Declarations.

"*Flight*" means:

(a)    as respects fixed wing aircraft, from the time commencing with the actual takeoff run until the aircraft has completed its landing roll;

(b)    as respects rotorcraft, from the time the rotors start to revolve under power for the purpose of becoming airborne until they cease to revolve after landing; and

(c)    as respects any other aircraft, while it is released from a mooring or other anchoring device.

"*In Motion*" means while the aircraft is moving under its own power or the momentum generated therefrom or while it is in *flight* and, if the aircraft is a rotorcraft, anytime that the rotors are rotating.

"*Insured*" means:

(a)    as respects all Coverages, the *Named Insured*; and

(b)    as respects any PART I or PART II Coverage applicable to a *scheduled aircraft* or a *temporary substitute aircraft*:

(1)    any person or organization while using such aircraft with the permission of the *Named Insured* provided the actual use is within the scope of such permission, and

(2)    any other person or organization, but only as respects that person's or organization's liability because of acts or omissions of the *Named Insured* or of an *insured* described in (b) (1) above, provided, however, that the insurance afforded by sub-sections (b) (1) and (2) above does not apply to:

(i)    any person or organization, or agent or employee thereof (other than employees of the *Named Insured*) engaged in the manufacture, maintenance, repair, or sale of aircraft, aircraft engines, components or accessories, or in the operation of any airport, hangar, flying school, flight service, or aircraft or piloting service, as respects any *occurrence* arising out of such activity, or

(ii)    the owner or lessor, or any agent or employee thereof, of any *temporary substitute aircraft*.

(c)    as respects any PART I or PART II Coverage applicable to a *non-owned aircraft*:

any director, executive officer or employee of a *Named Insured* corporation or a partner of a *Named Insured* partnership or a member or manager of a *Named Insured* limited liability company while such person is acting in such capacity provided that no person shall be an *insured* as respects any aircraft owned in whole or in part by, registered in the name of, or leased for a period in excess of thirty (30) days by such person or any member of that person's household.



GLOBAL AEROSPACE

Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

## POLICY DEFINITIONS – GENERAL (Continued)

(d)   as respects any PART I or PART II Coverage applicable to *airport premises*:

any director, executive officer or employee of a *Named Insured* corporation or a partner of a *Named Insured* partnership or a member or manager of a *Named Insured* limited liability company while such person is acting in such capacity and as respects the operation of an *auto* or *mobile equipment*:

(1)   any person while using the *auto* or *mobile equipment* with the permission of the *Named Insured* provided the actual use is within the scope of such permission and

(2)   any other person or organization, but only as respects that person's or organization's liability because of acts or omissions of the *Named Insured* or of an *insured* described in (d) (1) above.

provided that no person shall be an *insured* as respects any *auto* or *mobile equipment* owned in whole or in part by, registered in the name of, or leased for a period in excess of thirty (30) days by such person or any member of that person's household.

(e)   as respects Coverage H:

any director, executive officer or employee of a *Named Insured* corporation or a partner of a *Named Insured* partnership or a member or manager of a *Named Insured* limited liability company while such person is acting in such capacity.

"*Insured Value*" means:

(a)   as respects any *scheduled aircraft* which is described in Item 4 of the Declarations:

the amount shown as part of the description of the aircraft; or

(b)   as respects any *scheduled aircraft* which is a *newly acquired aircraft*:

(1)   if purchased by the *Named Insured*, the actual cost of the aircraft to the *Named Insured*, or

(2)   if leased to the *Named Insured*, the amount for which the *Named Insured* is responsible as set forth in the lease,

provided, however, that sub-sections (b) (1) and (2) above are subject to the maximum allowable amount set forth in Item 3 of the Declarations as part of the Company's Limit of Liability for Coverage L.



GLOBAL AEROSPACE

Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

## POLICY DEFINITIONS – GENERAL (Continued)

"*Mechanics' tools*" means tools which are owned by mechanics employed by the *Named Insured* and designated for use on aircraft and stored primarily at the *Named Insured's airport premises*.

"*Medical Expenses*" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

"*Military or Governmental Agreement*" means a written hold harmless agreement required by a military or governmental authority as a prerequisite to the use of an airport, heliport or a related facility, in which the *Named Insured* agrees to assume the liability of others for *bodily injury* or *property damage*.

"*Mobile Equipment*" means a vehicle, including any special use vehicle designed for the maintenance, servicing or handling of aircraft, which is maintained for use primarily on or next to *airport premises*, provided it is not an *auto*.

"*Named Insured*" means:

(a)   the person(s) or organization(s) named in Item 1 (a) of the Declarations.

(b)   any organization newly formed or acquired by the person(s) or organization(s) named in Item 1 (a) of the Declarations, other than a partnership, joint venture or limited liability company, and over which the person(s) or organization(s) named in Item 1(a) of the Declarations maintains ownership or majority interest, provided there is no other similar insurance available to that organization.  However:

    (1)   unless the formation or acquisition is reported to Global Aerospace Underwriting Managers (Canada) Limited and an additional premium paid if required by the Company, the insurance for a newly formed or acquired organization is afforded only until the 60th day after the organization is formed or acquired or until the end of the policy period, whichever is earlier; and

    (2)   this policy does not apply to injury or damage that occurred before the organization was formed or acquired.

"*Newly Acquired Aircraft*" means an aircraft, in addition to the aircraft described in Item 4 of the Declarations, acquired by the *Named Insured* after the beginning of the policy period, either by purchase or by exclusive written lease for a period in excess of thirty (30) days, provided that:

(a)   on the acquisition date, there is no other insurance similar to the insurance afforded by this policy in effect on such aircraft; and

(b)   the *Named Insured* reports the acquisition to Global Aerospace Underwriting Managers (Canada) Limited within sixty (60) days of the acquisition.

"*Non-Owned Aircraft*" means any aircraft used by or on behalf of the *Named Insured*, other than:

(a)   a *scheduled aircraft*;

(b)   aircraft owned in whole or in part by or registered in the name of the *Named Insured*;

(c)   a *temporary substitute aircraft*;

(d)   aircraft having a combined *crew member* and *passenger* seating capacity in excess of forty (40) seats; or

(e)   aircraft which are the subject of a lease or service agreement with the *Named Insured* for a period in excess of thirty (30) days unless such lease or service agreement is reported to Global Aerospace Underwriting Managers (Canada) Limited and an additional premium paid if required by the Company.



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

## POLICY DEFINITIONS – GENERAL (Continued)

"**Occurrence**" means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **insured**, but this definition shall not be construed so as to preclude coverage for **bodily injury** or **property damage** resulting from efforts to prevent dangerous interference with the operation of the aircraft.

"**Partial Loss**" means **physical damage** which is not a **total loss**.

"**Passenger**" means any person other than a **crew member** in, on or boarding an aircraft for the purpose of riding or flying therein, or alighting therefrom after a ride, **flight** or attempted **flight** therein.

"**Personal Effects**" means personal property of **crew members** or **passengers** while the property is on board the **scheduled aircraft**, **temporary substitute aircraft** or **non-owned aircraft**.  Personal effects does not include **cargo**.

"**Physical Damage**" means direct and accidental physical loss of or damage to the **scheduled aircraft**, **spare engine**, **spare part** or **mechanics' tools**, but does not include loss of use or any residual decrease in value after repairs have been made.

"**Pilot In Command**" means the pilot responsible for the operation and safety of the aircraft.

"**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

"**Property Damage**" means:

(a)  physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom; or

(b)  loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

"**Scheduled Aircraft**" means the aircraft described in Item 4 of the Declarations and any **newly acquired aircraft**, including the propulsion system and parts and equipment installed in or on the aircraft (1) while installed and (2) while temporarily removed until replacement has commenced; also tools and equipment in the aircraft which have been designed for use with the aircraft and are ordinarily carried in the aircraft.

"**Spare Engines**" means propulsion engines which have been or which are intended to be installed in a **scheduled aircraft** and which are not included in the definition of **scheduled aircraft**.

"**Spare Parts**" means parts or accessories specifically designed for installation in a **scheduled aircraft** and which are not included in the definition of **scheduled aircraft**.

"**Suit**" means a civil proceeding in which damages because of **bodily injury** or **property damage** to which this insurance applies are alleged.  **Suit** includes:

(a)  an arbitration proceeding in which such damages are claimed and to which the **insured** must submit or does submit with the consent of the Company; or

(b)  any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with the consent of the Company.



GLOBAL AEROSPACE

**POLICY DEFINITIONS – GENERAL** (Continued)

"***Temporary Substitute Aircraft***" means any aircraft used by or on behalf of the ***Named Insured*** in place of a ***scheduled aircraft*** which is withdrawn from normal use because of breakdown, repair, servicing or ***physical damage***, other than:

(a)    a ***scheduled aircraft***;

(b)    aircraft owned in whole or in part by or registered in the name of the ***Named Insured***;

(c)    a ***non-owned aircraft***; or

(d)    aircraft having a combined ***crew member*** and ***passenger*** seating capacity in excess of forty (40) seats.

"***Total Loss***" means ***physical damage*** for which the ***cost to repair*** equals or exceeds the ***insured value*** of the ***scheduled aircraft***.



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

# POLICY CONDITIONS – GENERAL

### (APPLICABLE TO ALL COVERAGES UNLESS SUPERSEDED BY OTHER POLICY PROVISIONS)

1. **Automatic Insurance for Newly Acquired Aircraft.**

   The insurance afforded by this policy for the *scheduled aircraft* described in Item 4 of the Declarations shall automatically apply to a *newly acquired aircraft*.  Unless the *Named Insured* and the Company agree otherwise, the Coverages and Limits of Liability, other than the Limit of Liability for Coverage L, pertaining to the *newly acquired aircraft* shall be the same as are afforded for that *scheduled aircraft* which is described in Item 4 of the Declarations as having the greatest combined *crew member* and *passenger* seating capacity.  The Limit of Liability for Coverage L pertaining to the *newly acquired aircraft* shall be its *insured value* as set forth in the Policy Definitions.

2. **Bankruptcy.**

   Bankruptcy or insolvency of the *insured* or of the *insured's* estate will not relieve the Company of its obligations set forth in this policy.

3. **Cancellation**.

   (a) The *first Named Insured* may cancel this policy by mailing or delivering to Global Aerospace Underwriting Managers (Canada) Limited advance written notice of cancellation.

   (b) The Company may cancel this policy by mailing or delivering to the *first Named Insured* written notice of cancellation at least:

      (1) ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

      (2) thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

   (c) The Company will mail or deliver its notice to the address of the *first Named Insured* set forth in the policy on the day on which notice is given.

   (d) Notice of cancellation shall state the effective date of cancellation.  The policy period will end on that date.

   (e) If this policy is cancelled, the Company will send the *first Named Insured* any premium refund due. If the Company cancels, the refund will be pro rata.  If the *first Named Insured* cancels, the refund may be less than pro rata.  The cancellation will be effective even if the Company has not made or offered a refund.

   (f) If notice is mailed, proof of mailing shall be sufficient proof of notice.



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

**POLICY CONDITIONS – GENERAL** (Continued)

4.  **Changes.**

This policy contains all the agreements between the **Named Insured** and the Company concerning the insurance afforded. The **first Named Insured** is authorized to make changes in the terms of this policy with the consent of the Company.  This policy's terms can be amended or waived only by endorsement issued on behalf of the Company by Global Aerospace Underwriting Managers (Canada) Limited and made a part of this policy.

5.  **Duties in the Event of Occurrence, Physical Damage, Claim or Suit.**

(a)  The **insured** shall promptly notify Global Aerospace Underwriting Managers (Canada) Limited of an **occurrence** that may result in a claim or **suit** or of any **physical damage** sustained that may result in a claim.  In the event of theft, robbery or pilferage the **insured** shall also give notice to the police.  To the extent possible, notice should include:

(1)  how, when and where the **occurrence** took place or the **physical damage** was sustained;

(2)  the names and addresses of any injured persons and witnesses; and

(3)  the nature and location of any injury or damage arising out of the **occurrence** or **physical damage**.

(b)  If a claim is made or **suit** is brought against the **insured**, the **insured** shall immediately forward to Global Aerospace Underwriting Managers (Canada) Limited every demand, notice, summons or other process received by the **insured** or any representative of the **insured.**

(c)  The **insured** must:

(1)  authorize the Company to obtain records and other information;

(2)  cooperate with the Company in the investigation or settlement of the claim or the investigation, defense or settlement of the **suit**; and

(3)  assist the Company in the enforcement of any right against any person or organization that may be liable to the **insured** because of injury or damage to which this insurance may also apply.

(d)  No **insured** will, except at that **insured's** own cost, voluntarily make any payment, assume any obligation, or incur any expense, other than for first aid, without the consent of the Company.

6.  **Failure to Give Notice.**

Inadvertent failure to give notice or other information to Global Aerospace Underwriting Managers (Canada) Limited as required by this policy will not relieve the Company of its obligations set forth in this policy, provided that any such inadvertent failure is corrected as soon as possible after coming to the attention of the **Named Insured** or its Insurance Department, if any.

7.  **Financial Responsibility Laws.**

When this policy is certified as proof of financial responsibility for the future under the provisions of any financial responsibility law applicable to aircraft or **mobile equipment**, such insurance as is afforded by this policy for **bodily injury** liability and **property damage** liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy.  The **insured** agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.



POLICY CONDITIONS – GENERAL (Continued)

8.  **Lay-up**.

   (a)  In the event a **scheduled aircraft** is laid up and out of service for sixty (60) or more consecutive days during the policy period and the lay-up is not due to **physical damage** to which Coverage L applies, the Company will allow a lay-up premium credit.

   (b)  The **first Named Insured** agrees to notify Global Aerospace Underwriting Managers (Canada) Limited of the beginning and end of the lay-up period.  The Company shall calculate the amount of the credit on a pro rata basis as follows:

   (1)  fifty (50%) percent as respects Coverages A and L, and

   (2)  fifty (50%) percent as respects Coverages J and K.

9.  **Legal Action Against the Company.**

   This policy does not provide any person or organization a right:

   (a)  to join the Company as a party or otherwise bring the Company into a **suit** asking for damages from an **insured**; or

   (b)  to sue on this policy unless all of its terms have been fully complied with.

   A person or organization may sue the Company to recover on a settlement and release of liability signed by the Company, the **insured** and the claimant or the claimant's legal representative or on a final judgment against an **insured** obtained after an actual trial; but the Company will not be liable for damages that are not payable in accordance with the terms of this policy or that are in excess of the applicable limit of liability.  Service of process shall be made upon Global Aerospace Underwriting Managers (Canada) Limited on behalf of the Company.  However, the Company does not waive its right to commence an action in any court or venue of competent jurisdiction or to seek a transfer to another court or venue as permitted by law.



Aircraft - BH  (Rev. 01/01/2007)

Policy Number: 20009966-ON-21

**POLICY CONDITIONS – GENERAL** (Continued)

10. **Other Insurance.**

If other valid and collectible insurance is available to the *insured* for a loss covered by this policy, the Company's obligations are limited as follows:

(a)  Primary Insurance

This insurance is primary except when (b) below applies.  If this insurance is primary, the Company's obligations are not affected unless any of the other insurance is also primary.  Then the Company will share with all that other insurance by the method described in (c) below.

(b)  Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1)  if the loss arises out of any *temporary substitute aircraft* or *non-owned aircraft*;

(2)  if the loss arises out of the ownership, maintenance or use of *airport premises*; or

(3)  if the loss arises out of:

(i)  aircraft that the *Named Insured* has either sold or relinquished from an exclusive written lease, or

(ii)  materials, parts, equipment, fuel, lubricants or services for aircraft of others provided or performed by the *Named Insured* on a not-for-profit basis to the extent that insurance therefor is afforded by Coverage H.

When this insurance is excess, the Company will have no duty arising from any coverage afforded by this policy to defend the *insured* against any *suit* if any other insurer has a duty to defend the *insured* against that *suit*.  If no other insurer defends, the Company will undertake to do so, but the Company will be entitled to the *insured's* rights against all those other insurers.

When this insurance is excess over other insurance, the Company will pay only its share of the amount of the loss, if any, that exceeds the sum of:

(1)  the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  the total of all deductible and self-insured amounts set forth in all that other insurance.

When the insurance afforded by this policy is excess over any other insurance, then the Company's limits of liability in this policy shall be reduced by the applicable limits of such other insurance if such other insurance shall have been written through Global Aerospace Underwriting Managers (Canada) Limited or any of its subsidiaries or subsidiaries thereof.

Using the method described in (c) below, the Company will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the limits of liability shown in this policy.

(c)  Method of Sharing

If all of the other insurance permits contribution by equal shares, the Company will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of liability or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of liability to the total applicable limits of liability of all insurers.



**GLOBAL AEROSPACE**

POLICY CONDITIONS – GENERAL (Continued)

11. **Premiums.**

   The *first Named Insured*:

   (a)  is responsible for the payment of all premiums; and

   (b)  will be the payee for any return premiums the Company pays.

12. **Representations.**

   By accepting this policy, the *Named Insured* agrees:

   (a)  the statements in the Declarations are accurate and complete;

   (b)  those statements are based upon representations made by the *Named Insured* to the Company; and

   (c)  the Company has issued this policy in reliance upon the *Named Insured's* representations.

13. **State Statutes.**

   If the terms of this policy are in conflict with or inconsistent with the statutes of any state where this policy is in effect, this policy will conform to those state statutes.

14. **Titles of Paragraphs**.

   The titles of the various paragraphs of this policy and amendments, if any, attached to this policy and divider tabs, if any, are inserted solely for reference and are not to be deemed in any way to limit or affect the provisions to which they relate.

15. **Transfer of Rights of Recovery Against Others to the Company.**

   If the *insured* has rights to recover all or part of any payment the Company has made under this policy, those rights are transferred to the Company.  The *insured* must do nothing after loss to impair them.  At the request of the Company, the *insured* shall bring *suit* or transfer those rights to the Company and assist the Company in enforcing those rights.

16. **Transfer of the Named Insured's Rights and Duties Described in This Policy.**

   The Named Insured's rights and duties set forth in this policy may not be transferred without the written consent of the Company except in the case of the death of an individual *Named Insured*.

   In the event of the death of an individual *Named Insured*, that *Named Insured's* rights and duties will be transferred to the deceased *Named Insured's* legal representative but only while acting within the scope of duties as such.  Until a legal representative for the deceased *Named Insured* is appointed, anyone having proper temporary custody of that *Named Insured's* property will have that *Named Insured's* rights and duties but only as respects that property and only for a period of not more than sixty (60) days from the date of death.

17. **Two or More Aircraft.**

   When the insurance afforded by this policy applies to two (2) or more aircraft, the terms of this policy shall apply separately to each.



Aircraft - BH  (Rev. 01/01/2007)

**POLICY CONDITIONS – GENERAL** (Continued)

18.  **United States Army, Air Force and Navy Insurance Requirements.**

If, on behalf of the Company, Global Aerospace Underwriting Managers (Canada) Limited issues a Department of Defense certificate of insurance DD Form 2400 or any substitute or replacement thereof, then the insurance policy provisions required by the regulations referred to in the certificate shall be deemed to be incorporated into this policy and substituted for any policy provisions which are inconsistent with the provisions required by the regulations.

19.  **Where and When this Policy Applies.**

This policy applies to ***bodily injury*** or ***property damage*** which occurs and to ***physical damage*** sustained:

(a)   anywhere in the world; and

(b)   during the policy period.



## PHYSICAL DAMAGE COVERAGE
### (Applicable to the War, Hi-jacking and Other Perils Exclusion)

In consideration of the payment of the premium for this policy, and solely as respects the aircraft described in the schedule of this endorsement, it is agreed that sub-paragraphs (a), (c), (d), (e), (f) and (g) of General Policy Exclusion 1, the War, Hi-jacking and Other Perils Exclusion, of this policy are deleted as respects the Physical Damage Coverage afforded by this policy.  This insurance is subject to the following provisions which are applicable only to the insurance afforded by this endorsement and which shall be in addition to all other applicable provisions not amended in this endorsement:

1.  This insurance shall only apply to the extent that the loss or damage is not otherwise excluded by sub-paragraph (b) of General Policy Exclusion 1, the War, Hi-jacking and Other Perils Exclusion.

2.  The limits of the Company's liability as respects the insurance afforded by this endorsement shall not exceed, in the aggregate during the policy period, the lesser of:

    (a)  the sum of the *Insured Values* of the aircraft described in the schedule of this endorsement on the date of loss, or

    (b)  $300,000,000

3.  (a)  <u>Amendment of Terms or Cancellation</u>:

    The Company may give notice, effective on the expiry of seven (7) days from 12:01 A.M. local time at the address of the *first Named Insured* set forth in the policy on the day after which notice is issued, to review the rate of premium and/or the geographical limits.  In the event of the review of the rate of premium and/or the geographical limits not being accepted by the *first Named Insured* then at the expiry of the said seven (7) days, this endorsement shall become canceled at that date.

    (b)  <u>Automatic Review of Terms or Cancellation</u>:

    Notwithstanding 3 (a) above, this endorsement is subject to automatic review by the Company of the rate of premium and/or conditions and/or geographical limits effective on the expiry of seven (7) days from the time of any hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter wheresoever or whensoever such detonation may occur and whether or not an aircraft described in the schedule of this endorsement may be involved.  In the event of the review of the rate of premium and/or conditions and/or the geographical limits not being accepted by the *first Named Insured* then at the expiry of the said seven (7) days, this endorsement shall become canceled at that date.

    (c)  <u>Cancellation by Notice</u>:

    This endorsement may be canceled by the Company or the *first Named Insured* giving notice not less than seven (7) days prior to the end of each period of three (3) months from inception.

4.  <u>Automatic Termination</u>:

Whether or not such notice of cancellation has been given, this endorsement shall terminate automatically upon the outbreak of war (whether there be a declaration of war or not) between any of the following states: the United Kingdom, the United States of America, France, the Russian Federation, the People's Republic of China. Provided that if an aircraft described in the schedule of this endorsement is in *flight* when such outbreak of war occurs then this endorsement, subject to its terms and conditions and provided it is not otherwise canceled, terminated or suspended, will be continued as respects such aircraft until such aircraft has completed its first landing thereafter.

**SCHEDULE**

<u>Year, Make, Model & Identification Number</u>

1989, McDonnell Douglas MD-87, VP-CAA

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium: $1,500.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners

Global Aerospace Underwriting Managers (Canada) Limited

Endorsement No. 1
Page 2 of 2

BY:_____

## LIABILITY AND MEDICAL EXPENSES COVERAGE – SPECIFIC AIRCRAFT
### (Applicable to the War, Hi-jacking and Other Perils Exclusion)

**With respect to aircraft: VP-CAA - McDonnell Douglas MD-87**

In consideration of the payment of the premium for this policy, it is agreed that sub-paragraphs (a), (c), (d), (e), (f) and (g) of Policy Exclusion (j), the War, Hi-jacking and Other Perils Exclusion, of this policy are deleted as respects the Liability and Medical Expense Coverages afforded by this policy.  This insurance is subject to the following provisions which are applicable only to the insurance afforded by this endorsement and which shall be in addition to all other applicable provisions not amended in this endorsement:

1.  Exclusion applicable only to any insurance afforded as respects the deletion of sub-paragraph (a) of Policy Exclusion 1, the War, Hi-jacking and Other Perils Exclusion:

    This insurance shall not include liability for damage to any form of property on the ground situated outside Canada and the United States of America unless caused by or arising out of the use of aircraft.

2.  Limitation of Liability:

    The limit of the Company's liability as respects the insurance afforded by this endorsement shall be a sub-limit of **$500,000,000** or the applicable policy limit whichever the lesser any one *occurrence* and in the annual aggregate except with respect to *crew members* and *passengers* to whom the full policy limit(s) shall apply.  This sub-limit shall apply within the full policy limit and not in addition thereto.

3.  Automatic Termination:

    To the extent provided below, insurance afforded by this endorsement shall terminate automatically in the following circumstances:

    (a)  All insurance

        Upon the outbreak of war (whether there be a declaration of war or not) between any two or more of the following states: the United Kingdom, the United States of America, France, the Russian Federation, the People's Republic of China;

    (b)  Any insurance afforded in respect of the deletion of sub-paragraph (a) of General Policy Exclusion 1, the War, Hi-jacking and Other Perils Exclusion.

        Upon the hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter wheresoever or whensoever such detonation may occur and whether or not an aircraft may be involved;

    (c)  All insurance in respect of any aircraft requisitioned for either title or use

        Upon such requisition;

provided that if an aircraft is in the air when (a), (b) or (c) occurs, then the insurance afforded by this endorsement (unless otherwise cancelled, terminated or suspended) shall continue in respect of such aircraft until completion of its first landing thereafter and any *crew members* and *passengers* have disembarked.

4.  Review and Cancellation:

    (a)  Review of Premium and/or Geographical Limits (7 days)

        The Company may give notice to review premium and/or geographical limits - such notice to become effective on the expiry of seven (7) days from 12:01 A.M. local time at the address of the **first Named Insured** set forth in the policy on the day after which notice is given.

    (b)  Limited Cancellation (48 hours)

        Following a hostile detonation as specified in 3 (b) above, the Company may give notice of cancellation of one or more parts of the insurance afforded by this endorsement by reference to sub-paragraphs (c), (d), (e), (f) and/or (g) of Policy Exclusion 1, the War, Hi-jacking and Other Perils Exclusion - such notice to become effective on the expiry of forty-eight (48) hours from 12:01 A.M. local time at the address of the **first Named Insured** set forth in the policy on the day after which notice is given.

    (c)  Cancellation (7 days)

        The insurance afforded by this endorsement may be canceled by either the Company or the **first Named Insured** giving notice to become effective on the expiry of seven (7) days from 12:01 A.M. local time at the address of the **first Named Insured** set forth in the policy on the day after which notice is given.

    (d)  Notices

        All notices referred to in this endorsement shall be in writing.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium: $1,500.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to: SMB Capital and Bernstein Equity Partners        Endorsement No. 2

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

**AMENDATORY ENDORSEMENT**
**Unearned Premium after Total Loss**

In consideration of an additional premium of **$250.00 USD** and solely as respects the aircraft described in the schedule of this endorsement, it is hereby understood and agreed that Item 8 of CONDITIONS – APPLICABLE TO ALL PART III COVERAGES) of Part III of the Insuring Agreement applies to **All Aircraft as indicated on the Aircraft Schedule page vi..**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium:  $250.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

Endorsement No. 3
Page 1 of 1

**AUTOMATIC SPARE ENGINE COVERAGE**

It is understood and agreed that **COVERAGE M** - PHYSICAL DAMAGE TO SPARE ENGINES, SPARE PARTS AND MECHANICS' TOOLS - ALL RISKS OF LOSS, of Part III of the DECLARATIONS is expanded to include the following:

*Spare engine(s)*, including an auxiliary power unit, or (a) *spare part(s)* which you lease, rent or borrow, and is intended to be installed in your aircraft.  Coverage is provided, to the extent required in any agreement relating to such *"spare engine(s)"* or *"spare part(s)"*, under the following conditions:

1.  The *"spare engine(s)"* or *"spare part(s)"*, must be in your possession or under your control.

2.  The coverage provided by this endorsement extends only to *"spare engine(s)"* or *"spare part(s)"* installed, or intended to be installed, in any *scheduled aircraft* described in the **DECLARATIONS EXTENSION** - DESCRIPTION OF INSURED AIRCRAFT, or aircraft added by endorsement thereafter.  Coverage also extends to the *"spare engine(s)"* or *"spare part(s)"* while being transported to or from your aircraft.

With respect to the coverage provided by this endorsement, the owner of the *"spare engine(s)"* or *"spare part(s)"* is:

A)  included as a Loss Payee under PART III – PHYSICAL DAMAGE COVERAGES, and

B)  included as an additional insured under PART I – LIABILITY COVERAGES

Paragraphs A) and B) above shall not apply with respect to any claims whatsoever, whether physical damage losses or bodily injury and/or property damage liability, arising out of a defect in the design, manufacture, overhaul, maintenance, repair or modification of the *"spare engine(s)"* or *"spare part(s)"*, by the owner.

The limit of coverage afforded by this endorsement for *"spare engine(s)"* or *"spare part(s)"* shall be the actual value, as agreed between the Named Insured and the owner, and is included as part of the *Insured Value* as described in the **DECLARATIONS EXTENSION** - DESCRIPTION OF INSURED AIRCRAFT, and not in addition to.

The limit of coverage for your own engine shall be the actual value of the engine or part at the time of loss or damage.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium:  $0.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners                                              Endorsement No. 4

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

**AMENDATORY ENDORSEMENT**
**Profit Commission Conditions**

It is agreed that provided (1) the policy is not cancelled at the request of the **first Named Insured**, (2) the policy is not cancelled for non-payment of premium, and (3) all premiums are paid in accordance with the terms of the policy:

1.  As soon as practicable after each annual policy period, and if you renew this Policy for one year for the same coverages, the Company will pay to the **first Named Insured** an amount equal to fifteen percent (15%) of the amount by which seventy percent (70%) of the gross earned premium for Coverage "L" for this policy exceeds losses paid, losses outstanding and allocable loss expense for each annual term.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium:  $0.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners                                                Endorsement No. 5

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

## AVIATION PERSONAL INJURY LIABILITY INSURANCE ENDORSEMENT

In consideration of the payment of the premium for this policy, and subject to the following provisions which are applicable only to the insurance afforded by this endorsement and which shall be in addition to all other applicable provisions not amended in this endorsement, it is agreed that:

1.  The Company shall pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **personal injury**. This insurance applies solely to **personal injury** caused by an offense arising out of the **Named Insured's** ownership, maintenance or use of a **scheduled aircraft** or the **Named Insured's** use of **temporary substitute aircraft**, **non-owned aircraft** or **airport premises** but only if the offense was committed anywhere in the world during the policy period.

2.  The insurance afforded by this endorsement is subject to the General Policy Exclusions and also does not apply to:

    (a)  **personal injury**:

         (1)  caused by or at the direction of the **insured** with the knowledge that the act would violate the rights of another and would inflict **personal injury**.

         (2)  arising out of oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity.

         (3)  arising out of oral or written publication of material whose first publication took place before the effective date of this insurance.

         (4)  arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **insured**.

         (5)  for which the **insured** has assumed liability in a contract or agreement, but this exclusion (a) (5) does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

         (6)  to:

              (i)   a person arising out of any:

                    a.  refusal to employ that person;

                    b.  termination of that person's employment; or

                    c.  employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

              (ii)  the spouse, child, parent, brother or sister of the person referred to in (i) above arising out of any:

                    a.  refusal to employ the person referred to in (i) above;

                    b.  termination of the employment of the person referred to in (i) above; or

                    c.  employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at the person referred to in (i) above.

This exclusion (a) (6) applies:

(i)    whether the *insured* may be liable as an employer or in any other capacity; and

(ii)   to any obligation to share damages with or repay someone else who must pay damages because of the injury.

(7)    arising out of an offense committed before the formation or acquisition of any organization described in subparagraph (b) of the General Policy Definition of *Named Insured*.

(8)    committed by or on behalf of an *insured* whose business is advertising, broadcasting, publishing or telecasting.  However, this exclusion (a) (8) does not apply to paragraphs (a), (b) or (c) of the definition of *personal injury* contained in this endorsement.

(9)    arising out of:

(i)    noise, whether or not it is audible to the human ear, or vibration, including sonic boom or similar phenomena caused by the movement or operation of an aircraft or any of its parts;

(ii)   any interference with the quiet enjoyment of property of others caused by the operation of an aircraft or any of its parts; or

(iii)  the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of *pollutants* at any time.

(b)  any loss, cost or expense arising out of any:

(1)    request, demand or order that any *insured* or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of *pollutants*; or

(2)    claim or *suit* by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of *pollutants*.

3.   Paragraph 1 of the DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS provisions of PART I of this policy is amended to read as follows:

The Company shall have the right and duty to defend the *insured* against any *suit* seeking damages on account of *personal injury* to which this insurance applies.  However, the Company will have no duty to defend the *insured* against any *suit* seeking damages for *personal injury* to which this insurance does not apply.  The Company may, at its discretion, investigate any offense and settle any claim or *suit* that may result.  But:

(a)  the amount the Company will pay for damages is limited as described in the Limits of Liability section of PART I - LIABILITY COVERAGES; and

(b)  the Company's right and duty to defend end when it has used up the applicable limit of liability in the payment of judgments or settlements for *personal injury* to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for in paragraph 2 below.

4.  Subparagraph 2 (b) and paragraphs 3 and 4 of the DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS provisions of PART I of this policy shall not apply to the insurance afforded by this endorsement.

5.  Part I LIMITS OF LIABILITY provisions of this policy are amended to read as follows:

    1.  **Severability of Interest**

        The insurance afforded applies separately to each **insured** against whom claim is made or **suit** is brought, except as respects the limits of the Company's liability.

    2.  **Total Liability**

        Irrespective of the number of (1) persons or organizations who are **insureds**, (2) persons or organizations who sustain **personal injury**, or (3) claims made or **suits** brought on account of **personal injury**, the Company's liability is limited as follows:

        (a)  The PERSONAL INJURY AGGREGATE LIMIT and the PERSONAL INJURY LIMIT shown in the schedule made part of this endorsement shall be a part of and not in addition to the Company's limit of liability for Coverage A, B, C or G, as applicable, set forth in the Declarations.

        (b)  Subject to (a) above, the PERSONAL INJURY AGGREGATE LIMIT shown in the schedule made part of this endorsement is the most the Company will pay for damages because of **personal injury**.

        (c)  Subject to (a) and (b) above, the PERSONAL INJURY LIMIT shown in the schedule made part of this endorsement is the most the Company will pay for the sum of all damages because of all **personal injury** sustained by any one person or organization.

    3.  **Aggregate Limit**

        The PERSONAL INJURY AGGREGATE LIMIT shown in the schedule made part of this endorsement applies separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than twelve (12) months. In that case the additional period will be deemed part of the last preceding period for purposes of determining the limit of liability. If the effective date of this endorsement does not coincide with the beginning of the policy period or any anniversary thereof, the aggregate limit of this endorsement will apply to the period of less than twelve (12) months starting at the effective date of this endorsement and terminating at the next anniversary of the beginning of the policy period, or the end of the policy period, whichever occurs first.

6.  The following General Policy Definitions are amended as indicated:

    "**Insured**" means the **Named Insured,** and:

    (a)  if the **Named Insured** is an individual, that person's spouse and any employee, but only while acting within the scope of the duties of an employee;

    (b)  if the **Named Insured** is a partnership or joint venture, any partner, member or employee thereof, but only as respects the partner's, member's or employee's liability as such;

    (c)  if the **Named Insured** is a limited liability company, any member, manager or employee thereof, but only as respects the member's, manager's or employee's liability as such;

Endorsement No. 6
Page 3 of 5

(d)  if the **Named Insured** is other than an individual, partnership, joint venture or limited liability company, any executive officer, director or employee, but only while acting within the scope of the duties of an executive officer, director or employee.

"**Suit**" means a civil proceeding in which damages because of **personal injury** to which this insurance applies are alleged.  **Suit** includes:

(a)  an arbitration proceeding in which such damages are claimed and to which the **insured** must submit or does submit with the consent of the Company; or

(b)  any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with the consent of the Company.

7.  The following definition is added:

"**Personal Injury**" means injury arising out of one or more of the following offenses:

(a)  false arrest, detention or imprisonment;

(b)  malicious prosecution;

(c)  the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, premises or aircraft that person occupies, committed by or on behalf of the owner, landlord, lessor, or lessee of such room, dwelling, premises or aircraft;

(d)  oral or written publication of material that slanders or libels a person's or organization's goods, products or services; or

(e)  oral or written publication of material that violates a person's right of privacy.

8.  The title of General Policy Condition 5. **Duties in the Event of Occurrence, Physical Damage, Claim or Suit** is amended to read **Duties in the Event of Occurrence, Offense, Physical Damage, Claim or Suit** and paragraph (a) of this General Policy Condition is amended to read as follows:

(a)  The **insured** shall promptly notify Global Aerospace Underwriting Managers (Canada) Limited of an **occurrence** or offense that may result in a claim or **suit** or of any **physical damage** sustained that may result in a claim.  In the event of theft, robbery or pilferage the **insured** shall also give notice to the police.  To the extent possible, notice should include:

(1)  how, when and where the **occurrence**, offense or **physical damage** took place;

(2)  the names and addresses of any injured persons and witnesses; and

(3)  the nature and location of any injury or damage arising out of the **occurrence**, offense or **physical damage**.

9.  General Policy Condition 10. **Other Insurance** is amended to read as follows:

If other valid and collectible insurance is available to the **insured** for a loss covered by this policy, the Company's obligations are limited as follows:

(a)  This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis.

The Company will have no duty arising from any coverage afforded by this policy to defend the **insured** against any **suit** if any other insurer has a duty to defend the **insured** against that **suit**. If no other insurer defends, the Company will undertake to do so, but the Company will be entitled to the **insured's** rights against all those other insurers.

The Company will pay only its share of the amount of the loss, if any, that exceeds the sum of:

(1)  the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  the total of all deductible and self-insured amounts set forth in all that other insurance.

When the insurance afforded by this policy is excess over any other insurance also written through Global Aerospace Underwriting Managers (Canada) Limited, then the Company's limits of liability in this policy shall be reduced by the applicable limits of such other insurance.

Using the method described in (b) below, the Company will share the remaining loss, if any, with any other insurance that is not described in this subparagraph (a) and was not bought specifically to apply in excess of the limits of liability shown in this policy.

(b)  Method of Sharing

If all of the other insurance permits contribution by equal shares, the Company will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of liability or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of liability to the total applicable limits of liability of all insurers.

**Schedule of Limits**

| | |
|---|---|
| PERSONAL INJURY AGGREGATE LIMIT | $25,000,000.00 |
| PERSONAL INJURY LIMIT | $25,000,000.00 |

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium:  $0.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners                    Endorsement No. 6
                                                                          Page 5 of 5

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

## CONTINGENT EMPLOYERS LIABILITY

It is agreed that:

1. Exclusion (c) of Part I - EXCLUSIONS - is deleted and the following substituted therefor:

(c)    To **bodily injury** to any employee of an **insured** arising out of and in the course of his employment by such **insured**; but this exclusion (c) does not apply to:

(1) Liability assumed by the **Named Insured** under any **military** or **governmental agreement**, or to the insurance afforded under Coverage J.

(2) Employees on whose behalf contributions are made by or required to be made by the **Named Insured** under the provisions of any Worker's Compensation Law.

2. Solely with respect to Paragraph 1 of this Endorsement, the Limits of Liability as set forth under Coverage A - AIRCRAFT LIABILITY (Scheduled Aircraft) - of the Policy Declarations is amended to:

(A)    With respect to the **scheduled aircraft** described in Item 4 of the Policy Declarations:

$25,000,000.00 each **occurrence**

(B)    With respect to the **non-owned aircraft** covered under Coverage C - AIRCRAFT LIABILITY (Non-Owned Aircraft):

$25,000,000.00 each **occurrence**

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium:  $0.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners                                    Endorsement No. 7

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

**AMENDATORY ENDORSEMENT**
**Engine Module Coverage**

In consideration of the payment of the premium for this policy, and subject to the following provisions which are applicable only to the insurance afforded by this endorsement and which shall be in addition to all other applicable provisions not amended in this endorsement, it is agreed that:

1.  Exclusion (c) of Part III - EXCLUSIONS - is amended to include the following:

> (3)   With respect to modular turbine engines, each module forming part thereof shall be regarded as a single aircraft part and any wear and tear, deterioration, breakdown, defects or failures and the consequences thereof within such module is excluded, but this exclusion shall not apply to any resultant loss or damage to other parts of the engine and/or aircraft caused thereby.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium:  $0.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners                                        Endorsement No. 8

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

## MEXICAN CERTIFICATE

In consideration of an additional premium of $0.00 USD this endorsement acknowledges that a Mexican Certificate has been issued for VP-CAA - 1989 McDonnell Douglas MD-87.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium: $0 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to: SMB Capital and Bernstein Equity Partners                    Endorsement No. 9

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

## SANCTIONS AND EMBARGO CLAUSE

Notwithstanding anything to the contrary in the Policy the following shall apply:

1.  If, by virtue of any law or regulation which is applicable to an Insurer at the inception of this Policy or becomes applicable at any time thereafter, providing coverage to the Insured is or would be unlawful because it breaches an embargo or sanction, that Insurer shall provide no coverage and have no liability whatsoever nor provide any defence to the Insured or make any payment of defence costs or provide any form of security on behalf of the Insured, to the extent that it would be in breach of such law or regulation.

2.  In circumstances where it is lawful for an Insurer to provide coverage under the Policy, but the payment of a valid and otherwise collectable claim may breach an embargo or sanction, then the Insurer will take all reasonable measures to obtain the necessary authorisation to make such payment.

3.  In the event of any law or regulation becoming applicable during the Policy period which will restrict the ability of an Insurer to provide coverage as specified in paragraph 1, then both the Insured and the Insurer shall have the right to cancel its participation on this Policy in accordance with the laws and regulations applicable to the Policy provided that in respect of cancellation by the Insurer a minimum of 30 days notice in writing be given. In the event of cancellation by either the Insured or the Insurer, the Insurer shall retain the pro rata proportion of the premium for the period that the Policy has been in force. However, in the event that the incurred claims at the effective date of cancellation exceed the earned or pro rata premium (as applicable) due to the Insurer, and in the absence of a more specific provision in the Policy relating to the return of premium, any return premium shall be subject to mutual agreement. Notice of cancellation by the Insurer shall be effective even though the Insurer makes no payment or tender of return premium.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium:  $0.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners                    Endorsement No. 10

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

## AMENDATORY ENDORSEMENT
### Where and When this Policy Applies

It is agreed that the POLICY CONDITIONS - GENERAL 19. **Where and When this Policy Applies** is amended to:

This policy applies to *bodily injury* or *property damage* which occurs and to *physical damage* sustained:

(a)   Anywhere in the world; and

(b)   During the policy period.

However;

This Policy excludes any loss, damage or expense howsoever occurring within the geographical limits of any of the following countries and regions:

(a)   Algeria, Burundi, Far North Region of Cameroon, Central African Republic, Democratic Republic of Congo, Ethiopia, Kenya, Mali, Mauritania, Nigeria, Somalia, The Republic of Sudan, South Sudan.

(b)   Colombia, Peru.

(c)   Afghanistan, Jammu & Kashmir, North Korea, Pakistan.

(d)   Abkhazia, Donetsk & Lugansk regions of Ukraine, Nagorno-Karabakh, North Caucasian Federal District, South Ossetia.

(e)   Iran, Iraq, Lebanon, Libya, North Sinai Province of Egypt (including Taba International Airport), Syria, Yemen.

(f)   Any country where the operation of the insured Aircraft is in breach of United Nations sanctions.

However coverage pursuant to this Policy is granted:

(a)   for the overflight of any excluded country where the flight is within an internationally recognised air corridor and is performed in accordance with I.C.A.O. recommendations; or

(b)   in circumstances where an insured Aircraft has landed in an excluded country as a direct consequence and exclusively as a result of force majeure.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium:  $0.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners                                    Endorsement No. 11

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

## ADDITIONAL EXCLUSIONS

1.  **ELECTRONIC DATE RECOGNITION**

This policy does not cover any claim, damage injury, loss, cost, expense or liability of any nature whatsoever arising from, occasioned by or in consequence of (whether directly or indirectly and whether wholly or partly):

(a)    the failure or inability to correctly recognize, process, distinguish, interpret or accept any change of year , date or time, including but not limited to:

(1)    the change of year from 1999 to 2000; or

(2)    the change of date from August 21, 1999 to August  22, 1999;

by any computer system, hardware, program or software, microprocessor, integrated circuit or similar device, whether in computer equipment or non-computer equipment, whether the property of any *insured* or of others; or

(b)    any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by any insured or for any insured or by any third party to determine, rectify or test any potential or actual problems described in paragraph (a) above.

2.  **ASBESTOS**

This policy does not apply to *bodily injury*, *property damage*, *personal injury*, or advertising injury relating to, arising out of or in consequence of:

(a)    The actual, alleged or threatened presence of asbestos in any form whatsoever, or any material or product containing, or alleged to contain asbestos; or

(b)    Any obligation, request, demand, order, or statutory or regulatory requirement that any *insured* or others test for, monitor, cleanup, remover, contain, treat, neutralize, protect against or in any other way respond to the actual, alleged or threatened presence of asbestos or any material or product containing, or alleged to contain, asbestos.

However, this exclusion shall not apply to any claim or suit caused by or resulting in a crash, fire, explosion or collision or a recorded in *flight* emergency causing abnormal aircraft operation.

Notwithstanding any other provisions of this policy, the Company will have no duty to investigate, defend or pay defense costs in respect of:

(1)    Any claim or suit excluded under paragraphs (a) or (b) above; or

(2)    Any such obligation, request, demand, order, or statutory or regulatory requirement described in paragraph (b) above.


ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium: $0.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners                                        Endorsement No. 12

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

**ELECTRONIC DATE RECOGNITION EXCLUSION**
**LIMITED COVERAGE ENDORSEMENT**

In consideration of the premium charged and to the extent such coverage is afforded by the policy, the Electronic Date Recognition Exclusion shall not apply to:

1.  any of the Physical Damage coverages, if any, provided by the policy; or

2.  any sums which the ***insured*** shall become legally obligated to pay as damages because of ***bodily injury*** or ***property damage*** caused by an ***occurrence***.

Notwithstanding paragraph 2 above, this endorsement shall not apply to:

(a)  any coverage for loss of use caused by an ***occurrence*** during the policy period arising out of subparagraph (a) or (b) of the Electronic Date Recognition Exclusion unless such loss of use also arises out of additional injury in the form of physical injury to or destruction of tangible property; or

(b)  any coverage for grounding; or

(c)  any coverage applying in excess of any scheduled underlying insurance.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium: Included

Attached to and made part of Policy No.: 20009966-ON-21

Issued to: SMB Capital and Bernstein Equity Partners                    Endorsement No. 13

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

## ELECTRONIC DATA EVENT LIABILITY EXCLUSION

This Policy excludes:

(1)    any form of mental injury, mental anguish, shock or fright, unless resulting from corporeal injury, caused by:

    (a)    a delay in, cancellation of or non-provision of air transportation and associated services;

    (b)    unauthorised access to and/or use of a person's or organisation's confidential, proprietary or personal information;

(2)    Property Damage to Electronic Data

arising out of a Data Event.

However, this exclusion shall not apply to such liability otherwise covered by the operative section(s) of this Policy caused by or resulting in a crash, fire, explosion or collision or a recorded in-flight emergency causing abnormal aircraft operation.

As used herein:

"Data Event" means any access to, inability to access, loss of, loss of use of, damage to, corruption of, alteration to or disclosure of Electronic Data.

"Electronic Data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.


Nothing herein shall override any other exclusion clause attached to or forming part of this Policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium:  $0.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____

Endorsement No. 14
Page 1 of 1

**AMENDATORY ENDORSEMENT**
**Terrorism Risk Insurance Act of 2002**
**(No Coverage Purchased)**

1. It is hereby noted that we have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and purchase of this coverage has been declined or not confirmed.

2. Therefore there is no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

3. All other terms, conditions and exclusions remain unchanged and apply in full force and effect to the coverage provided by this policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

This endorsement is effective: November 04, 2021

Endorsement Premium:  $0.00 USD

Attached to and made part of Policy No.: 20009966-ON-21

Issued to:  SMB Capital and Bernstein Equity Partners                    Endorsement No. 15

Global Aerospace Underwriting Managers (Canada) Limited

BY:_____